JOSEPH A. ALEMANY *v.* COMMISSIONER OF TRANSPORTATION
(13901)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued April 4—decision released June 26, 1990

*Frank W. Murphy,* for the appellant (plaintiff).

*Robert T. Morrin,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellee (defendant).

PETERS, C. J. The principal issue in this condemnation case is the availability of severance damages for the risk of losses that may arise from future use of a highway easement but which have not yet occurred at the time of the taking. The defendant, the commissioner of transportation, condemned an easement interest in a portion of the plaintiff's land in connection with the widening of United States Route 7. The defendant assessed damages in the amount of $7200, and filed a notice of condemnation with the Superior Court. The plaintiff, Joseph A. Alemany, brought an appeal for reassessment of damages in accordance with General Statutes § 13a-76.[1] After a hearing, the *Hon. Joseph J. Chernauskas,* state trial referee, exercising the powers of the Superior Court, awarded the plaintiff an

---

[1] General Statutes § 13a-76 provides in pertinent part: "APPEAL TO SUPE-RIOR COURT. REASSESSMENT OF DAMAGES OR BENEFITS BY TRIAL REFEREE. Any person claiming to be aggrieved by the assessment of such special damages or such special benefits by the commissioner may, at any time within six months after the same has been so filed, apply to the superior court for the judicial district within which such land is situated or, if said court is not in session, to any judge thereof for a reassessment of such damages or such benefits so far as the same affect such applicant."

additional $2400 in compensation, plus interest and $4650 for appraisal fees. The plaintiff appealed to the Appellate Court, and we transferred the case to ourselves pursuant to Practice Book § 4023. We reverse that portion of the judgment dealing with the assessment of damages.

The trial court found the following relevant facts, which are undisputed in this appeal. The plaintiff's property is located in Wilton at the intersection of Holleyhock Road and Route 7, known also as Danbury Road. The plaintiff's lot, which is nearly level and at street grade, contains approximately 8700 square feet. The lot has 80.53 feet of frontage on Danbury Road and 104.57 feet of frontage on Holleyhock Road. Also located on the premises is the plaintiff's two story wood frame commercial office building, which currently houses three offices. The plaintiff has twice renovated the structure since building it in 1973, and the court found it to be in good condition, with a remaining economic life of thirty years. Site improvements include a paved parking area, an illuminated sign, spotlights, fencing and landscaping. The property is served by public water and sewer systems, and is located near three major highways and a railroad.

Under the Wilton zoning regulations, the property, which is surrounded by strip commercial development, is located in a designated enterprise district, known as a DE-5 zone. Professional offices are a permissible use in a DE-5 zone, although the plaintiff's property conforms to neither the minimum five acre lot size nor the prohibition on front yard parking. Because the plaintiff's use of the property predated the DE-5 restrictions, however, the town approved a site plan for the current use with variances for both lot size and front yard parking. The approved site plan includes a landscaped buffer area separating the parking area from the highway.

The defendant condemned an easement "for highway purposes and its appurtenances" running along the entire length of the plaintiff's frontage on Route 7. The easement measures 84 feet in length on the easterly side and 80.53 feet on the westerly side, and varies in width from seven to nine feet. In total, the easement contains .02 acres, which represents 6.75 percent of the plaintiff's total usable land area. The current highway improvement project for which the easement was taken did not extend the travel portion of the highway to the easement area. The easement does cover the plaintiff's landscaped buffer area, however, and the Wilton town planner has opined that, in the event that the buffer is ever removed to facilitate the defendant's use of the easement, "the Town of Wilton would require that the 10-foot landscaped island be replaced on the property adjacent to the easement area." Replacing the buffer area in the plaintiff's adjacent property would, in turn, encroach upon the front yard parking area. Although neither the buffer area nor the sign had been moved by the time of trial, the defendant had requested the plaintiff to move the sign.

After hearing the testimony of the appraisers for both parties, the trial court found that the property was functioning in its highest and best use as professional office space, and that the property was developed to its maximum under the applicable land use regulations. With regard to the assessment of damages for the taking, the trial court rejected as unreliable the testimony of the plaintiff's expert witness, and instead adopted the approach of Arnold S. Tesh, an appraiser presented by the defendant. The court found, in accordance with Tesh's testimony, that the fair market value of the plaintiff's property, excluding the building, was $130,700 prior to the taking and $121,100 after the taking. Accordingly, the court ordered the defendant to pay damages in the amount of $9600. The court also

ordered that the defendant pay interest on the damages, and $4650 for the plaintiff's appraisal fees. The court rejected, however, the plaintiff's request for reimbursement of the $750 fee charged by his appraiser for testifying in court.

The plaintiff challenges three aspects of the trial court's judgment. First, the plaintiff contends that the trial court's assessment of damages was inadequate due to its allegedly mistaken conclusion that the defendant condemned an easement, rather than a fee simple interest, in the subject property. Second, he challenges the trial court's determination that he was not entitled to severance damages because the current highway improvement project did not have a direct impact on the property outside of the easement area. Finally, the plaintiff contends that the trial court should have awarded him reimbursement for the $750 fee charged by his appraiser for testifying in court.[2]

I

The plaintiff first contends that the trial court mistakenly concluded that the defendant condemned only an easement interest in his property. Emphasizing that the language of the notice of condemnation affords the defendant broad rights for the use of the property and contains no restriction on the duration of those rights, the plaintiff argues that the defendant actually acquired full fee simple title to the subject premises. Accordingly, the plaintiff contends, the trial court's assessment of damages must be revised to compensate for the forfeiture of the additional rights associated with fee simple title. We disagree.

---

[2] At trial, the plaintiff also alleged that, because the taking reduced even further the size of his already undersized lot, he should recover compensation for the resulting increase in nonconformity with the Wilton land use regulations. The trial court did not find this contention persuasive, however, and the plaintiff has not challenged this finding on appeal.

An instrument conveying an interest in land conveys only that which is specifically expressed in the document. *Connecticut Light & Power Co.* v. *Holson Co.,* 185 Conn. 436, 441, 440 A.2d 935 (1981). The language of the notice of condemnation in this case is unambiguous in its description of the property at issue as an easement. As a general matter, the notice characterizes the property as "an easement for highway purposes and its appurtenances." In its more specific provisions, the notice states that the property is needed for "the layout, alteration, extension, widening, change of grade and improvement" of Route 7. Since the condemnation, by its terms, is limited to use of the property for highway purposes, the defendant can exercise no more rights over the property than those consistent with an easement. *Peterson* v. *Oxford,* 189 Conn. 740, 745, 459 A.2d 100 (1983). We have also previously held that, when the commissioner of transportation condemns property pursuant to the statute authorizing takings for highway improvements, the property acquired is an easement. *Arborio* v. *Hartford Electric Light Co.,* 130 Conn. 592, 595, 36 A.2d 384 (1944); *Kratochvil* v. *Cox,* 129 Conn. 246, 249, 27 A.2d 382 (1942).[3]

Moreover, the plaintiff has retained substantial beneficial rights to the property. Since the current highway improvement project has not extended the travel portion of the highway over the easement area, the plaintiff can make full use of the easement area for his own purposes, provided that those uses are not inconsistent with the defendant's easement. *American Trading Real Estate Properties, Inc.* v. *Trumbull,* 215 Conn. 68, 74, 574 A.2d 796 (1990); *Center Drive-In Theatre, Inc.* v. *Derby,* 166 Conn. 460, 464, 352 A.2d 304 (1974). The plaintiff could, for example, maintain his existing

---

[3] Our earlier decisions on this subject involved the predecessor statute to General Statutes § 13a-73 (b), the provision under which the defendant had authority to condemn the property in this case.

landscaped buffer area within the easement in order to ensure continuing compliance with the conditions of his zoning variances. The plaintiff also enjoys the prospect of reacquiring full and unencumbered title to the property in the event that the state abandons the highway. *Ventres* v. *Farmington,* 192 Conn. 663, 668–69 n.3, 473 A.2d 1216 (1984); *Antenucci* v. *Hartford Roman Catholic Diocesan Corporation,* 142 Conn. 349, 356, 114 A.2d 216 (1955).

We are also not persuaded that the absence of a limitation on the duration of the defendant's rights to use the property serves to create a fee simple interest. The plaintiff correctly states that the proper focus in determining the nature of the easement should not be the scope of the current highway improvement project, but rather the rights, both present and future, that the defendant has acquired. The fact that the notice of condemnation contains no temporal limitation on the defendant's rights does not, however, overcome the express limitation on the scope of the defendant's ability to use the property. We therefore conclude that the trial court correctly determined that the defendant condemned only an easement for highway purposes and that title to the fee simple interest remains in the plaintiff.

## II

The plaintiff next challenges the trial court's refusal to grant severance damages for the taking. The plaintiff contends that, in assessing damages, the trial court mistakenly focused on the area within the designated easement and on the physical improvements associated with the current project. In doing so, the plaintiff contends, the trial court excluded from consideration the impact of more intensive future uses of the easement on the plaintiff's property outside of the easement area. We agree.

The function of the trial court in condemnation cases is to determine as nearly as possible the fair equivalent in money for the property taken. *Connecticut Printers, Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 410, 270 A.2d 549 (1970). Although the market value of the taken property is ordinarily the most appropriate measure of fair compensation; *DelVecchio* v. *New Haven Redevelopment Agency,* 147 Conn. 362, 363–64, 161 A.2d 190 (1960); we have long held that other measures may be appropriate when the fair market value measure of damages does not fully compensate the owner. *Colaluca* v. *Ives,* 150 Conn. 521, 530, 191 A.2d 340 (1963); *Winchester* v. *Cox,* 129 Conn. 106, 114–15, 26 A.2d 592 (1942); *State* v. *Suffield & Thompsonville Bridge Co.,* 82 Conn. 460, 467–68, 74 A. 775 (1909). "[T]he question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken." *Colaluca* v. *Ives,* supra.

We have consistently departed from the fair market value measure of damages in cases of partial takings. When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of a portion of the property causes. *D'Addario* v. *Commissioner of Transportation,* 180 Conn 355, 363, 429 A.2d 890 (1980); *Tandet* v. *Urban Redevelopment Commission,* 179 Conn. 293, 298, 426 A.2d 280 (1979); 7A P. Nichols, Eminent Domain (3d Ed. 1990) § 12.02 [1], p. 12-2. To ensure that severance damages are included in the trial court's assessment, damages should be calculated by the "before and after rule," under which "[t]he proper measure of damages is the difference between the mar-

ket value of 'the whole tract' as it lay before the taking and the market value of what remained of it thereafter." *Northeastern Gas Transmission Co.* v. *Ehrhorn,* 145 Conn. 83, 86, 139 A.2d 53 (1958); *Laurel, Inc.* v. *Commissioner of Transportation,* 180 Conn. 11, 36, 428 A.2d 789 (1980); *Meriden* v. *Ives,* 165 Conn. 768, 770, 345 A.2d 13 (1974).

We have also established, in highway easement cases, that the landowner is entitled to compensation for severance damages that might result from prospective uses of the easement as well as the damages immediately flowing from the presently contemplated highway improvement project for which the land was taken. *Bowen* v. *Ives,* 171 Conn. 231, 238, 368 A.2d 82 (1976); *Meriden* v. *Ives,* supra, 771; *Andrews* v. *Cox,* 127 Conn. 455, 459, 17 A.2d 507 (1941). As we stated in *Munson* v. *MacDonald,* 113 Conn. 651, 659, 155 A. 910 (1931), it is proper to consider "such use of the land taken as would in any reasonable anticipation be most disadvantageous to the landowner." *Andrews* v. *Cox,* supra; *Healey* v. *New Haven,* 47 Conn. 305, 314 (1879). In calculating severance losses, the trial court must "[take] into consideration the changes contemplated in the improvement and those which are so possible of occurence in the future that they may reasonably be held to affect market value." *Lefebvre* v. *Cox,* 129 Conn. 262, 265, 28 A.2d 5 (1942); *Wakeman* v. *Commissioner of Transportation,* 177 Conn. 432, 435, 418 A.2d 78 (1979); *D'Addario* v. *Commissioner of Transportation,* 172 Conn. 182, 184–85, 374 A.2d 163 (1976). Moreover, the landowner need not demonstrate that a more detrimental future use is likely to occur; all possibilities that would affect market value are relevant. *Andrews* v. *Cox,* supra, 462.

The trial court explicitly adopted the "before and after" test in its effort to determine the damages that

the plaintiff had suffered. In applying the before and after test, however, the court unduly restricted the factors to be considered in establishing the after-taking value of the property. The trial court reasoned that severance damages were not available because "[t]here are no unusual circumstances in being or even remotely possible where the easement acquisition would adversely affect the existing building and the site improvements not within the taking."[4] The court focused solely on the effects of the current highway improvement project, while excluding the potential impact of future, more intensive uses of the easement on the value of the plaintiff's remaining property. Since the easement affords the state the right to use the easement area more intensively than is contemplated in the current widening project, such as by extending the travel portion of the highway over the easement area, we conclude that the trial court adopted an unduly narrow approach to the assessment of damages.

The court's unduly restrictive approach led it to overlook several elements of severance damages that might reasonably affect the price that a buyer would be willing to pay for the plaintiff's property. First, the trial court failed to consider the impact of the prospect that the illuminated sign will have to be moved on the after-taking value of the property. The trial court rejected this as an element of damage on the ground that the sign had not yet been moved. That a potential consequence of a taking has not been manifested at the time of trial does not, however, preclude recovery. *Slavitt v. Ives,* 163 Conn. 198, 206, 303 A.2d 13 (1972). The trial court should have considered the possibility that the sign will eventually be moved, a prospect that seems

---

[4] We note that the defendant has conceded that his appraiser, whose appraisal the trial court adopted in toto, did not include any amount for severance losses in his estimate of damages.

quite likely in light of the fact that the defendant has already made such a request of the plaintiff.[5]

In addition to the sign removal, the trial court should also have considered the plaintiff's evidence concerning the possibility that future use of the highway easement could necessitate removal of the landscaped buffer area and reestablishment of the buffer area on the plaintiff's adjacent property, with the concomitant loss of the space available for parking.[6] In concluding that this potential loss was not compensable, the trial court noted that the plaintiff, as an existing nonconforming user, might not have to replace the buffer area if the current one is eliminated. This conclusion ignores the fact, however, that the plaintiff is operating under an approved site plan showing a buffer area between the highway and the parking area. While the plaintiff might be able to obtain a variance from the obligation to maintain a buffer area, a potential buyer

---

[5] The defendant contends that the cost of moving the sign should not be considered an element of damages in this action since the sign is personalty, rather than realty, and since the plaintiff would be able to recover the expense of moving under the Uniform Relocation Assistance Act, General Statutes § 8-266 et seq. This argument is without merit. We have consistently held that the expense of moving such personalty as heavy machinery is a proper element of severance damages. *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 102, 230 A.2d 9 (1967); *DelVecchio* v. *New Haven Redevlopment Agency,* 147 Conn. 362, 364–65, 161 A.2d 190 (1960); *Harvey Textile Co.* v. *Hill,* 135 Conn. 686, 689, 67 A.2d 851 (1949). Furthermore, it is apparent from the statute's statement of purpose that the Uniform Relocation Assistance Act is intended as a mechanism for reimbursement for moving expenses of persons displaced by condemnation; see General Statutes § 8-266; rather than for the reimbursement of severance damages. In any event, nothing in the statute suggests that it is intended as the exclusive remedy.

[6] Although the defendant's appraiser did testify that he included in his estimate of damages the amount of $200 for the loss of the landscaped buffer area, that figure represented the value of the landscaping itself, and did not include an amount reflecting the diminution in value of the remainder of the property that might be expected from the prospect of reestablishing the buffer area on the plaintiff's adjacent property.

of the plaintiff's property would be likely to discount its value because of the risk that such a proceeding would be costly or indeed might not succeed. The trial court should have taken this factor into account. *Wakeman* v. *Commissioner of Transportation,* supra, 435; *Appeal of Phillips,* 113 Conn. 40, 43–44, 154 A. 238 (1931).[7]

The trial court's failure to consider these important elements of the plaintiff's severance damages necessitates a remand for the purpose of reassessing damages. On remand, the trial court should consider the value of the plaintiff's property in light of the current highway project and any other changes that are so likely to occur in the future that they may reasonably be held to affect present value. For the assessment of prospective severance damages, the proper test is not the cost of future remedial action, but the present impairment of the value of the plaintiff's property that results from those potential losses. *Wakeman* v. *Commissioner of Transportation,* supra, 435–36; *Bowen* v. *Ives,* supra, 236–37; *Andrews* v. *Cox,* supra, 460. The determination of the after-taking value of the plaintiff's property depends, in turn, upon the court's assessment of the likelihood that future uses of the easement will actually cause such damages. *Andrews* v. *Cox,* supra; cf. *Petriello* v. *Kalman,* 215 Conn. 377, 396–97, 576 A.2d 474 (1990).

### III

The plaintiff's third and final contention on appeal is that the trial court should have reimbursed him for

---

[7] The plaintiff also contends that he should receive compensation for the loss of one of his tenants and his inability to lease the vacant office for an extended period of time. The trial court did not find, however, that the condemnation caused the plaintiff's difficulty in leasing the office, and the plaintiff has not shown that the trial court was clearly erroneous in failing to make such a finding. Practice Book § 4061; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 219–22, 435 A.2d 24 (1980).

the $750 fee charged by his appraiser for testifying in court. The plaintiff argues that he is entitled to reimbursement for this fee, notwithstanding the absence of any statutory provision explicitly requiring such reimbursement, because the appraiser's testimony was a necessary foundation for the admissibility of the appraiser's report. Given the centrality of proof of damages to his case, he contends that the court's refusal to award reimbursement for the fee violated his constitutional right to just compensation. We are not persuaded.

The authority for a landowner's recovery of appraisal fees in highway condemnation cases is found in General Statutes § 13a-76. This statute provides that, whenever the court determines that the commissioner's assessment of damages was inadequate, the court "shall award to such property owner such appraisal fees as [the court] determines to be reasonable." The question of what constitutes a reasonable amount of appraisal fees is an issue of fact for the trial court; *French* v. *Clinton,* 215 Conn. 197, 205, 575 A.2d 686 (1990); and we will not overturn that finding unless it is clearly erroneous. Practice Book § 4061; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 219–22, 435 A.2d 24 (1980).

The trial court awarded the plaintiff a total of $4650 in appraisal fees, the full amount of the appraiser's original bill. In light of the fact that the defendant challenged the reasonableness of the appraiser's fee, we conclude that the trial court could plausibly have determined that a reasonable fee for the services of the plaintiff's appraiser, taken as a whole, should not exceed $4650. Furthermore, we conclude that the court's award of what it has determined to be a reasonable amount for the appraiser's services fully satisfies the

constitutional requirement that the plaintiff receive just compensation for the taking.[8]

The judgment is reversed in part and the case is remanded for further proceedings to reassess damages in accordance with this opinion.

In this opinion the other justices concurred.

[8] We note, however, that our holding does not preclude the trial court from exercising its discretion to award additional appraisal fees if it deems such fees appropriate for additional services rendered in connection with the reassessment of damages on remand.