[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal and application for review of the statement of compensation in the amount of $2500 filed in connection with the taking on March 7, 1988, of a permanent easement over one thousand square feet of land in the southeast corner of the plaintiff's property at 667 Mountain Road in the Town of West Hartford in condemnation proceedings brought by the defendant for the replacement of the culvert where Hart Meadow Brook meets and flows underneath Mountain Road.
The culvert replacement was undertaken upon the recommendation of the "West Hartford Flood Plain Management Study", dated August 1986 and prepared for the defendant by the Soil Conservation Service to prevent backwater flooding and overtopping of a primary road by "10 percent chance storms." In conjunction with the culvert replacement, the defendant also undertook to reconstruct Mountain Road from its intersection with Albany Avenue, approximately 700 south of the brook, northerly to the Bloomfield town line. It was estimated by the town's engineer that the new culvert would significantly reduce the backwater for storms up to the 25 year frequency. For larger storms, the depth of the water topping the roadway would be reduced and would be contained in a channel across Mountain Road. Additionally, it was expected that for more frequent storms the new culvert would reduce the water elevation where it flows upstream and southeasterly across the plaintiff's property to the structure.
The defendant's flood control project in its specific application to the plaintiff's property consisted of the replacement of the existing 83" x 33" elliptical concrete pipe, installed in 1968 before the residential development of the subdivision in which the plaintiff's dwelling was constructed in 1984, with a twin 4' x 8' precast concrete box culvert. In addition to changes in the road profile adjoining the property frontage, the work included the installation and replacement of erosion control riprap and the removal of a large sycamore tree.
As authorized by its town council for this flood control project, the CT Page 865 defendant took by eminent domain proceedings a permanent easement of one thousand square feet in the southeasterly corner of the plaintiff's property, being forty feet on Mountain Road and in the rear and twenty-five feet in depth. The purpose of the easement was to acquire perpetual rights to construct, reconstruct, repair, operate and maintain a culvert under and across the area, together with appurtenances and adjacent riprapping of the embankment, with the surface of the ground to be restored to the same condition in which it was before the start of the the improvement, or any future maintenance, reconstruction or repair, as near as such restoration can be made.
In the adjudication of this appeal and review of the statement of compensation, the court heard evidence, including the testimony of expert appraisers, reviewed their appraisal reports and other documentary evidence, and viewed the subject property.
The plaintiff's property consists of a parcel of land with a dwelling thereon, situated on the westerly side of and known as No. 667 Mountain Road, in the Town of West Hartford, being Lot No. 2G on a map of the "Re-Subdivision of Lot #2" Louis J. Yvonne M. Milewski Mountain Road West, Hartford, Connecticut July 1971, which map is on file in the West Hartford Town Clerk's Office. The property is bounded as follows: Northerly by Lot 2I, 150 feet; Easterly by Mountain Road, 158.46 feet; Southerly by Lot 2E, 115 feet; Southwesterly by Lot 2E, 14.14 feet; Westerly by Lot 2E, 96.81 feet; Southwesterly by Lot 2E, 28.87 feet; and Westerly by Lot 2E, 37.21 feet, having an area of 20,868 square feet, or 0.479 acre.
In 1984, the plaintiff built a one-story Ranch style residence with a full basement and two-car attached garage on the land. The dwelling contains six rooms and has a living area of about 2245 square feet. It appears to be in excellent condition. Although the building line is fifty feet, the home is set back from the street fifty-five feet in order to clear the flood plain limit at its northeasterly corner. The bank of Hart Meadow Brook is close by. The building's placement on the lot is in the reverse position from what is customary. The "front" or main entranceway is in the rear of the lot, while the "back" or main living area, that is the living room, family room and master bedroom, front or face Mountain Road and the new covert. It is the view from this part of the house that is most disturbing to the occupants, who are the mother and stepfather of the plaintiff, who holds title to the property for their sole benefit. The plaintiff individually owns No. 665 Mountain Road, Lot 2E, which adjoins the subject property on the South and West.
The double garage is attached and perpendicular to the southerly end of the home with its doors facing a driveway to the south. The portion of Lot 2E that borders the plaintiff's property on the south is a 25-foot driveway strip that leads to the home in the rear of the subject property, No. 665 Mountain Road. The owners of Lot 2E on September 3, 1983, conveyed to the plaintiff, his heirs, successors and assigns, a permanent easement to use this driveway to a depth of one hundred feet from Mountain Road in common CT Page 866 with the grantors, their successors and assigns, for driveway purposes, the plaintiff agreeing thereby for himself, his successors and assigns, forever, to pay one-half of all costs for repairs, maintenance and snow removal of the common driveway. The length and width of this permanent common driveway easement is sufficient for ingress and egress to and from the plaintiff's garage, and together with the pavement on the plaintiff's land between the driveway and garage doors, sufficient to provide space for turning vehicles around to allow their front entry onto Mountain Road.
The common driveway and provision for the plaintiff's vehicle turn-around are in compliance with the following restrictions governing Lots 2E and 2G and all other lots in the "Re-Subdivision of Lot #2": (1) common driveways shall be provided wherever possible; and (2) on each lot there shall be provided a turn-around at the garage to prevent vehicles from backing out onto Mountain Road.
The plaintiff's claim for reassessment of damages is based upon the following reasoning: (1) the taking of the "easement," the limitations of its future use by the plaintiff as owner of the fee, and the actual use by the defendant of the "easement" constitute a taking of nearly the full fee of the property contained in the "easement" area; and (2) the severance of the property from its only usable frontage and the ability of the defendant to construct a large concrete and chain link fence drainage structure in the front yard has caused the remaining property outside the taking area to suffer severance damage.
It is agreed that the highest and best use of the subject property is its present use as a single family residence.
A real estate appraiser testifying on behalf of the plaintiff based his opinion of the property value on the market data approach. After analyzing and adjusting three comparable sales, he concluded that the indicated combined value of the plaintiff's dwelling and land before the taking at the unit value of $155 per square foot of the dwelling was $350,000.
In determining the value of the property after the taking, this appraiser considered the same three comparable sales, but made adjustments for severance damage to the plaintiff's dwelling and physical damage to the site as a result of the taking of the permanent easement. He cited these adverse effects on market value: (1) the easement is permanent; (2) the new culvert is about five feet closer to the dwelling than before, and larger in size, and the easement encumbers about 25% of the frontage; (3) the brook that runs generally from north to south "in front of the family room, living and bedroom windows, will be partly enclosed in the culvert, diminishing the amenities enjoyed presently by these 3 rooms or 50% of the dwelling;" and (4) potential resale value will be diminished due to the permanent easement and its location along the street frontage, preventing any improvements to the site in the future.
Based upon these considerations, the appraiser's estimated value of the CT Page 867 subject property after the taking was found to be $260,000. The damages, therefore, were calculated to be $90,000, consisting of severance damages to the dwelling in the amount of $82,500 and physical damages to the site because of the taking of the permanent easement in the amount of $7500.
After valuing the plaintiff's property before the taking, first by the cost approach, the defendant's appraiser found the replacement cost of the dwelling to be $198,000, the land value to be $100,000, and the site improvements to be $17,500, for a total value of $315,500. Based upon the market data or sales comparison approach, the property valuation was found to be $295,000. It was his considered opinion, therefore, that the indicated value of the subject property before the taking was $315,500.
The cost approach was utilized by him in determining the after taking valuation. The previously determined site value of $100,000 was the basis of this calculation. The easement area to lot area ratio of 5% was utilized in this appraisal. The value of the encumbered lot area to the property owner was estimated by him to be 50% of the value of the fee simple title to the same area. His adjustment for the presence of the easement on the subject site was found, therefore, to be 0.05 x 0.50, that is, 0.025 or 2.5% of $100,000, which is $2500. By this computation, the indicated value of the site to the overall value of the subject property after the taking was found to be $97,500. Adding thereto his estimate of replacement cost of the dwelling of $198,000 and the cost of the site improvements of $17,500, he valued the subject property by the cost approach after the taking at $313,000. In his opinion, therefore, the damages for the taking were $2500.
Plaintiff's counsel in his post-hearing memorandum has unjustly and without basis in fact or law suggested that the defendant has acted in bad faith in these proceedings by "very cleverly" taking the plaintiff's property in an "easement." He states further: "In fact, and in deed, the easement is nothing more than a less than subtle taking by the Town of the full rights of the square footage constituting the `easement.' The entire usable frontage of the site has been lost to the Town without payment for fee for either the taking area or the entire site."
The power of eminent domain by a condemning authority is to be used sparingly, limited in scope to its governmental purpose and provide for just compensation. The purpose and function of real estate condemnation, because it impinges upon the ownership of private property, must necessarily by constitutional limitation be restricted to the minimum of taking required in each instance. For that reason, condemnation wherever possible and practical should be of an easement, rather than of the fee. Anything greater than necessary may be enjoined. Takings of the nature before the court here are normally of an easement, permanent or of a duration sufficient to achieve their purpose, rather than of the fee. This is especially true of residential property where the taking of the fee may create a non-conformity of zoning requirements and be detrimental to its continued use and subsequent alienation. Conversely, the condemning authority is obliged to take no more than is necessary to prevent waste of tax dollars. CT Page 868
The crux of counsel's contention in this regard is that the perpetual easement diminishes the amount of usable land on the site and compensation should be made for the loss of additional rights associated with fee simple title. A similar claim was made in the recent case of Alemany, Commissioner of Transportation, 215 Conn. 437. In that case the defendant condemned an easement "for highway purposes and its appurtenances" running along the entire length of the plaintiff's frontage on Route 7. The easement contained 0.02 acre, which represented 6.75% of the plaintiff's total usable land area. The highway improvement project for which the easement was taken did not extend the travel portion of the highway to the easement area.
Emphasizing that the language of the notice of condemnation afforded the defendant broad rights for the use of the property and contained no restriction on the duration of those rights, the plaintiff in Alemany argued, as here, that the defendant actually acquired full fee simple title to the subject premises. Accordingly, he sought further compensation for the additional rights associated with fee simple title. The Supreme Court disagreed. The court's reasoning was legalistically simple. An instrument conveying an interest in land conveys only that which is specifically expressed in the document. The language of the notice of condemnation was unambiguous in its description of the property at issue there as an easement. Since the condemnation, by its terms, was limited to the use of the property specified in the notice, the defendant could exercise no more rights over the property than those consistent with an easement. The plaintiff, on the other hand, could also make full use of the easement are for his own purposes, provided that those uses were not inconsistent with the defendant's easement. Id., 442.
The plaintiff seeks severance damages to the property remaining after the taking for two reasons. First, he claims that after the taking, the property lost more than just a simple removal of square footage of land. Access to the property is not limited to the common driveway. There is no merit to this contention. The recorded grant to him of a permanent easement in the driveway adjoining his premises on the south in common with the grantors was intended to conform the subject property to the driveway and vehicle turn-around restrictions imposed upon the subdivision. Even otherwise, there is no evidence that the plaintiff had available space for vehicular access to his garage in between the former culvert and his southern boundary, and that such a driveway would meet the subdivision restrictions.
Second, he claims that the taking "has dramatically altered the entire visual frontage of the plaintiff's property and (the Town) has sought only to compensate the plaintiff for a miniscule taking of easement rights." Again, there is no basis for this conclusion. A comparison of the photographic evidence of the former culvert and surrounding area with a dramatic and vivid photograph of the new culvert, supplemented by the personal observation on viewing by the court, shows a pronounced and substantial improvement in the picture or sight of the new culvert and its CT Page 869 surrounding area. No riprap or other erosion control is evident in the photographs of the preexisting culvert. The exposed concrete top and sides of the former culvert as well as of the concrete supports of the chain link fence posts, together with the gullies on the two sides of the concrete pipe, are evidence of soil erosion produced by running water. In addition, debris across the culvert opening and across the brook near it is shown in one of the photographic exhibits as obstructing the flow of the brook.
Formerly, one saw a massive open concrete pipe in the ground completely exposed on its surface and sides from its opening at the brook to the street line. The concrete ground supports for the chain link fence along the street line on both sides of the pipe were also visible, as well as the gullies or washouts above and on the two sides of the concrete pipe from the two exposed concrete fence supports to the brook. All of this evidences uncontrollable water damage.
The present view shows a clean-appearing culvert with a concrete cap and riprap for erosion control to prevent the uncovering of the structure and the formation of gullies or ditches along the two sides of the culvert and the banks of the brook at the culvert. In addition, where the protective chain link fence formerly ran along the street line only, it now runs by the sidewalk only to the northern end of the culvert, then it turns inward and runs along the concrete cap to the southern end of the culvert, where it again turns inward and parallels the top of the riprap, forming a protective barrier on all three sides of the culvert, the riprap and the brook in the easement area. It is evident also that the larger culvert will reduce backwater flooding of the plaintiff's property along the banks of the brook in heavy storms, as well as reduce the incidence of flooding on Mountain Road in front of the subject property. The court finds that not only has the sight been improved, but also the site.
"When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of a portion of the property causes." Alemany v. Commissioner of Transportation, supra, 444. The court finds no severance damages to the property of the plaintiff remaining after the taking. His entitlement is only to damages for the taking of the easement in the amount of $5000 and to damages for the removal of a large sycamore tree in the amount of $1000.
After viewing the subject property, and after giving due consideration to the opinions of the expert witness and to my knowledge of the elements that establish value, I find that the before taking value of the plaintiff's property was $340,000, and that its value after the taking was $334,000. Damages for the taking, therefore, are assessed at $6000.
Judgment may enter for the plaintiff in the amount of $6000, less $2500 previously deposited with the Clerk of the Court, or in excess of $3500, with interest on such excess from the date of taking to the date of payment, CT Page 870 together with costs and a reasonable appraisal fee of $500.
WILLIAM C. BIELUCH STATE TRIAL REFEREE