[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from an assessment of damages by the Commissioner of Transportation for the taking of an easement from plaintiff's land for the purpose of widening Route 7 in Norwalk. The Commissioner assessed the damages at $11,000.00, but during the trial, his expert made a new assessment of $29,000.00 using the comparable land sales which the plaintiff's appraiser, Mr. Glendenning, had suggested.
The land taken by the state consists of an unrestricted easement of a strip along the entire street frontage of the plaintiff's property at 660 Main Avenue, Norwalk. The strip is ten feet wide and 97 feet long. (See exhibit J.)
On the plaintiff's property is the plaintiff's package store business founded by Elmer Singewald in 1947. Prior to the taking there was free and open access to the store from the road with no curbs between the road and the store and the distance between the paved part of the road and the store of some 20 feet. This layout permitted cars to enter from the highway from either the north or the south, park at random in front and on the north side of the store and pull out easily onto the highway.
More than one half of the area taken has been saved and a curbing has been installed. The front of the building is between nine and eleven feet from the easement line. (See exhibit one.) The edge of the pavement is 16 to 18 feet from the front of the building so that the space left for parking has been severely restricted. (See exhibits I and J.)
The court made a site visit and found the parking in front and to the north side of the store limited. After parking on the north side of the store, exiting required backing into a part of the highway and then driving parallel to the road to the driveway on the other side of the store. This could not be done if a car was parked in front of the store unless one was driving a compact or mini car. In fact, where before the taking ten cars, more or less, could be parked in front and besides the store and had total ease of exiting, only three, at the most, could be accommodated after the taking and each of those had i considerably more difficulty in exiting onto Route 7, which the court observed to be a well traveled highway.
The task of the court is to find the fair market value of the land before the taking and after it and include therein severance damages in order to determine the amount of compensation the plaintiff should receive.
Severance damages have recently been considered in CT Page 2008 Alemany v. Commissioner of Transportation, 215 Conn. 437 (1990), as those which might result from prospective uses of the easement as well as the "damages immediately flowing from the presently contemplated highway improvement project for which the land is taken." The court also said that it was proper to consider "such use of the land taken as would in any reasonable anticipation be most disadvantageous to the landowner." Further, the court said that "the trial court must take into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value." It further went on to say that all possibilities that would affect market value are relevant. Citing Andrews v. Cox, 127 Conn. 455 at 462 (1941).
In this case, the notice of condemnation and assessment[1] states that the easement is found to be necessary for the layout, alteration, extension, widening, change of grade and improvement of U.S. Route 7. There is, therefore, no restriction on the scope or duration of the easement, and the entire area could be paved for the road as over 50 per cent of it is now. Thus, access to the store may be even more limited in the future.
While the court may not award damages for loss of profits, it must take into consideration all elements of damages which result from the taking. This includes a determination of the highest and best use of the property. In this case the property is being used as a liquor and wine store with a large storage area in the rear, particularly for the storage of wine. It has been operated at this location since 1947 and has been a profitable business. It has a uniquely favorable location in that it is the last liquor store between Norwalk and Weston, which is a dry town, and the first liquor store between Weston and Norwalk.
According to the appraisal report, exhibit K, of plaintiff's appraiser, there is a moratorium on new liquor permits. The rules presently allow one store per 2500 of population with a maximum, under the rules, of 31. There are presently 37 preexisting according to Mr. Glendenning's report. While there has been a decline in the basic revenue for three years before the taking from a gross of over a million to 900,000, one of the factors that appears to have contributed to that decline was the fact that the owner and operator of the store suffered a stroke and that his son who assisted in the operation spent most of his time transporting his father, the owner, to the hospital for rehabilitation. Consequently, the store lacked the kind of close management that it had had previously. In addition, the law changed with respect to the CT Page 2009 minimum price at which liquor could be sold permitting it to be sold above costs. This affected all liquor stores negatively.
The construction on Route 7 began in 1984. While the easement was not used until 1988, the construction on either side of the easement had an impact on the traffic pattern in the area, according to the testimony of Mr. Singewald, who is now conducting the business on a full time basis after his father had completed his treatment for his stroke. He further testified that customers had not returned to the store since they had fallen into different habits while the construction work was in progress over a period of two years and then found access more difficult once the easement was completed.
Taking all these facts into consideration, the plaintiff's appraiser, Mr. Glendenning, estimated that there was a loss to the business of about twelve and a half per cent per year as a result of the difficulty of access and inconvenience to the customers. Mr. Donald Singewald described the actual, loss as approximately ten per cent per year over a three year period. The resulting figures were between $600,000.00 and $674,000.00. Further, the continuance effect of the easement would appear likely to last indefinitely and may even worsen if the easement itself is totally paved and further curbing installed.
The damages estimated by the state's appraiser were I significantly increased in the course of the trial by the state's expert, Mr. Oles. He raised his estimate from $11,600.00 to $29,100.00 after accepting the comparable sales figures used by the plaintiff's appraiser and his approach to determine the fair market value of the site. Thus his report was abrogated by his testimony and his original estimate invalidated. His final estimate, however, differed from that offered by the plaintiff's appraiser in two respects: it did not include any severance damage as defined in Alemany v. Commissioner of Transportation, 215 Conn. 437 (1990); two, it assumed that there was some value to the plaintiff in the fee simple over which the easement encroached.
The plaintiff's expert, on the other hand, included all the elements of severance damage sent forth in the Alemany case. He also found that there was no value to the plaintiff in the fee simple over which the easement lay.
In establishing the value of the premises before and after the taking, including the severance damage, Mr. Glendenning used the three approved methods of evaluation: (1) the comparable sales with respect to the site value; (2) income capitalization; and (3), the cost approach. CT Page 2010
The court finds his estimates of damage to be substantiated by the evidence and by the figures he used to come to his conclusions. The court also finds that his conclusion that there was no value left to the plaintiff in the fee simple of the land affected by the easement is appropriate, given the unlimited nature of the easement, the broad purpose of its acquisition and the indefinite length of time it was to run. In Nichols, Law of Eminent Domain, 3rd Edition, Volume 4, Section12-41 (2) at pages 744 and 745, the following appears:
 Nevertheless, when land is taken for such purposes as a highway or a railroad (which require a permanent and substantially exclusive occupation of the surface), the distinction between taking of the fee and of the easement has no practical application in the determination of the compensation to be assessed for the land actually taken. While the damages to the owner's remaining land may be less if the use of the land taken is limited by the nature of the easement, the interest remaining in the owner of the fee in the land taken is in such case of nominal value, and he is awarded the same measure of compensation for the land actually taken as if the fee was acquired by the condemning party, namely, the full market value of the land.
The court, therefore, finds that the estimate given by the plaintiff's expert is well established by his well documented and reasoned report and by his testimony as well as by the evidence in this case.
The court, therefore, finds the issues for the plaintiff, and orders the assessment of damages to be increased to $68,000.00.
The court further orders the fee of the plaintiff's appraiser in the amount of $3,750.00 (exhibit L) to be paid in full by the State.
MARGARET C. DRISCOLL STATE TRIAL REFEREE