[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by Roger Bussiere and Valerie K. Bussiere from the assessment of damages in the amount of $975 paid on deposit by the defendant to the Clerk of Court for the partial taking by eminent domain on October 24, 1991, of their property on the easterly side of and known as No. 476 Poquonock Avenue, being Route 75, in the Town of Windsor. This condemnation was found to be necessary for the layout, alteration, extension, widening, change of grade, drainage and improvement of the highways Route 75 and Interstate Route 91, and consisted of the following easements:
 1. A full and perpetual drainage right of way within an area of 0.051 of an acre, more or less, and located between and opposite approximate station 11+44 and station 12+15 right, Base Line Present Conn. Route 75, Poquonock Ave., as more particularly shown on the map hereinafter referred to.
 2. An easement for temporary work area for the purpose of construction of drainage improvements during the reconstruction of Route 75 within an area of 0.017 of an acre, more or less, and located between and opposite stations 11+73 and 12+00 right, said Base Line, as more particularly shown on said map. Said easement shall terminate automatically upon completion of work unless sooner released by the state. The temporary easement area taken under this paragraph will be restored by grading and seeding the area.
Said easements are more particularly shown and delineated on a map entitled: "Town of Windsor, Map Showing Easement Acquired From Roger Bussiere, et al. by The state of Connecticut, Reconstruction of I-91 Route 75, Drainage Improvements, Scale 1" = 20', May 1991, Robert W. Gubala, Transportation Chief Engineer — Bureau of Highways." CT Page 7862
The subject property is a nearly rectangular parcel of land about 0.51 of an acre in area improved with a single-family two-story frame dwelling containing 9 rooms and a two-car built-in garage. The street frontage is one hundred sixty-two feet. Its location is about one mile north of the center of Windsor. The property is zoned Residential AA, but does not meet the required lot area.
The land is at street grade and reasonably level to an area about 15 feet behind the dwelling. The land along the north and east property lines is about 10 feet below the street and house lot grade. About 25 feet north of the property on Poquonock Avenue a brook enters the adjoining land through a culvert underneath the roadway and flows easterly to the Farmington River. This brook crosses the plaintiffs' boundary about 65 feet easterly of the highway and then runs through the property more or less parallel to the northerly line.
The culvert for the flow of the brook at this highway crossing was inadequate during heavy storms and caused flooding of the highway and adjoining lands. To alleviate this condition the defendant entered into an agreement with the town. As part of this contract the defendant acquired by eminent domain the easements now before the court for valuation.
As part of the drainage improvements, the channel upstream from Poquonock Avenue was widened. Triple 36" metal culverts were installed underneath the roadway, ending at a wall on the property adjoining on the north. The watercourse easterly from the endwall was widened by cutting the slope on the plaintiffs' bank. A riprap channel and sedimentation control system were installed on their land. The location of the watercourse as widened remained essentially the same on the plaintiffs' property. Measuring by scale, the plaintiffs' appraiser estimated the drainage right of way at its eastern terminus to be about 12 feet from the dwelling.
The respective appraisers for the parties agree, and the court concurs, that the highest and best use of the property is a continuation of its present use for a single-family dwelling. They both utilized the sales comparison or market analysis in their estimation of fair market value, but with a different approach to the sales compared. The plaintiffs' appraiser compared single-family residential properties, while the defendant's appraiser restricted his comparisons to building lots, asserting that the value of the dwelling was not affected by the taking.
Based upon three sales of residential properties that occurred in Windsor in 1991 before the taking, the plaintiffs' appraiser estimated the value of the subject property at taking to be $190,000. He found its valuation after the taking to be $175,000, and thereby calculated the damages to the plaintiffs to be $15,000. In adjusting the sales price of each of his three comparable residential properties, he allowed a reduction of 10% for the drainage right of way on the subject property. He testified CT Page 7863 that the major element of damage was the encroachment of the drainage easement to about 12 feet from the dwelling. This, he said, would restrict the owners' future activities in that area of the property. On cross-examination, he attributed the damages to a reduction in the "overall price" of the property, rather than to direct or severance damages. Neither in his report nor in his testimony did he find any damage due to the temporary work area easement.
The defendant's appraiser, who was an employee of the defendant at the time of his valuation, only estimated the value of the plaintiffs' land to be $65,000 before the taking, and $64,200 after the taking, resulting in damages of $800 from the condemnation of the permanent drainage right of way. Since in his opinion the existing single-family dwelling and related site improvements were not affected by the taking, he did not appraise them. In adjusting the sales price of each of his three comparable building lots, he allowed a reduction in value of $650 for the drainage right of way on the plaintiffs' property.
To estimate the damages associated with the temporary work easement area, the defendant's appraiser used the ratio of the easement area to the total area of the lot, capitalized at 7% for one year. This he computed to be $152, rounded to $200, making the total damages $1000. The defendant, however, only assessed damages at $975 and paid that sum to the Clerk of the Court on deposit.
When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's property that the severance of a portion of the property causes. Alemany v. Commissioner of Transportation, 215 Conn. 437, 444 (1990). Under the circumstances of this condemnation, and especially because of the close proximity of the permanent drainage easement to the plaintiffs' dwelling, the court finds that severance damage has occurred due to this taking. To the "before and after rule," under which the proper measure of damages is the difference between the fair market value of "the whole tract" as it lay before the taking and the market value of what remained of it thereafter. Id., 444-45. Such an award will include the value of the part taken, as well as any damages visited upon the remainder as a result of the taking. Laurel, Inc. v. Commissioner of Transportation, 180 Conn. 11, 37 (1980).
It is the charge of this court to make an independent determination of value and fair compensation for the property taken in the light of all circumstances, the evidence, the opinions of the expert witnesses, his knowledge of the elements that establish value, and a viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 383, 388
(1989).
The description of property taken by eminent domain should be as accurate as the description required in a deed of land. The land must be sufficiently described so that a surveyor could locate the parcel without CT Page 7864 the aid of extrinsic evidence. The land should be so exactly described as to be understood by an ordinary person who has no engineering degree. Accordingly, unless the whole tract taken is surrounded by natural boundaries, such as streams or highways, the description must be by metes and bounds. That is, it must contain an initial point definitely situated, and the courses and distances of the boundary lines. The fact that the description is incomplete or unintelligible without consultation with a map or plan is not objectionable if the map is referred to in the description and is filed with it, and, taken together, the map and the description make clear what property is intended to be included in the taking. 6 P. Nichols, Eminent Domain, (Rev.3d Ed.) Section 26.112, pp. 26-68 — 26-73.
The verbal description of the "full and perpetual drainage right of way within an area of 0.051 of an acre, more or less, and located between and opposite approximate station 11+44 and station 12+15 right, Base Line Present Conn. Route 75, Poquonock Ave., as more particularly shown on the map hereinafter referred to" in the Certificate of Taking is inadequate by itself. The map referred to must be consulted for a further and precise location of the easement taken on the plaintiffs' property.
An examination of this "Taking Map," Plaintiffs' Exhibit B, during the proceeding raised the concern of the court as to the plaintiffs' adequate understanding of the area covered by the condemned permanent easement. The survey of the perpetual easement on the taking map is legally sufficient by civil engineering standards. The southerly boundary of the easement begins at a point on the easterly line of Poquonock Avenue, Route 75, directly opposite station 12+00 right, Base Line Poquonock Avenue, marked by a Connecticut Highway Department (CHD) marker; it then proceeds northeasterly at an angle of 180 degrees for an unmarked distance shown by a solid line to a point 45 feet from a directional line on property adjoining to the north and being now or formerly of Helen T. Waivers; it then continues easterly for another unmarked distance shown by a solid and broken line 145 feet southerly of and parallel to the above directional line to a point. The northerly line of the easement is coterminous with the property line. The description of the drainage right of way on the taking map, therefore, is confined to angles, lines and an area of 0.051 of an acre, more or less.
While by survey the location of the easement is ascertainable from the taking map, for the understanding of the plaintiffs of the property taken from them by this eminent domain proceeding, neither the description in the certificate of taking nor that in the taking map referred to therein is adequate. While the directional line on the property to the north is shown to be 150 feet in length, neither the length of the southerly boundary line of the easement nor the length of its northerly boundary along the plaintiffs' property line is ascertainable, except by scaling the lines shown on the taking map. The boundaries of the permanent easement taken cannot be understood or followed by an ordinary person who has no surveying or civil engineering knowledge. This was further apparent to the court and to counsel at the viewing of the property where not even the beginning point, the CHD marker, could be found on the ground, which is not to say CT Page 7865 that it was not there.
When this state of facts became evident to the court during the trial, the defendant's Hydraulic and Drainage Division's Supervising Engineer on request prepared a copy of the taking map on which he showed by scale measurement the lengths of the two portions of the southerly boundary line of the easement running easterly from the highway to be 12 feet, more or less, and 87 feet, more or less, respectively, for a total of 99 feet, more or less. (Defendant's Exhibit 11). He also testified and indicated on the exhibit that the southeasterly limit of the easement was at the end of the indicated line. No measurement was given in his testimony or shown on this exhibit for the length of the northerly boundary of the permanent easement along the plaintiffs' property line.
The lack of a readily apparent and understandable description of the taking in both the certificate of taking and the taking map is unfair and unjust to the plaintiffs as condemnees, and to their transferees in the future. It casts a shadow on the title to the subject property that could, at the least, require a more detailed and descriptive survey delineating the bounds and extent of the drainage right of way. The description of the taking, although legally sufficient to a surveyor or civil engineer, is unacceptable to the court for the lack of a ready comprehension of its extent and boundaries. This is the case whether damages are assessed at $975 or a hundredfold. Future title problems and expense to the property owners are anticipated and should be precluded by their creator at this time.
For this reason, and for a proper understanding and delineation of the partial taking, the defendant is directed to mark by pins or merestones the corners and angle point of the permanent easement, and to prepare a revised taking map showing the metes and bounds, with linear measurements, of the area of the drainage right of way taken by these eminent domain proceedings. A copy of this revised taking map is to be filed in the Windsor Land Records, furnished to the plaintiffs through their attorney, and filed with the court records of this proceeding.
Counsel for the defendant in post-hearing argument has claimed that the state trial referee in a condemnation appeal must hear and determine all issues of title and fix the boundaries of the premises taken in order to reassess the special damages, citing Transportation Plaza Associates v. Powers, 203 Conn. 364, 370-71, 373 (1987). That case is inapposite to the present case. The court has no jurisdiction in this appeal to determine issues of title or to fix the boundaries of the drainage right of way. All that this court may do, and has done, is to direct that the defendant delineate by metes, bounds and markers the boundaries of the permanent easement that has been taken by eminent domain.
In Transportation Plaza Associates the defendant commissioner of transportation condemned property known as the Stamford Railroad station and owned by the plaintiff to develop the property as a central transportation center. The eminent domain proceedings were conducted in CT Page 7866 accordance with the provisions of General Statutes Sections 8-128 through8-131. An appeal was taken from the defendant's assessment under the authority of Section 8-132 to a panel of three state trial referees who reassessed the award of damages. Thereafter an appeal and cross appeal were taken to the Supreme Court, which found no error.
In that eminent domain proceeding the defendant commissioner based his compensation on the assumption that the property taken was subject to an eighty foot right of way, which he claimed was depicted on the taking map. The trial court concluded that such an eighty foot wide right of way did not exist on the property. The defendants assigned error in this finding, claiming that the state trial referees had no jurisdiction to consider title issues in a review of compensation under Section 8-132.
The Supreme Court disagreed, holding that Section 8-132 "empowers the trial referees, after hearing the parties and viewing the property, to revise such statement (of compensation) in any manner as they deem proper. This broad power afforded to the referees clearly includes the power to revise the description of the property." Id., 370-71. This jurisdiction over title, however, does not extend to appeals for reassessment of damages from the taking of land for state highway purposes brought under General Statutes Section 13a-76. "It should be noted that these (cited) cases involved appeals filed pursuant to Section 13a-76, which enables aggrieved parties to obtain a reassessment of damages and empowers the trial court to `reassess such damages and benefits so far as they affect such applicant. . . .' The present case, however, was filed pursuant to General Statutes Section 8-132, which specifically empowers the trial court to `revise [the] statement of compensation in such manner as [the court] deems proper. . . .'" Id., 372 n. 4.
In conclusion, I find that the before taking value of the subject property was $190,000 and that the after taking value is 186,500, resulting in damages of $3500. In addition, the plaintiffs are entitled to damages of $200 for the temporary work area easement. Damages, therefore, are assessed at $3700.
Judgment may enter for the plaintiffs in the amount of $3700, less the sum of $975 on deposit with the Clerk of Court to which the plaintiffs are entitled, or an excess of $2725, with interest on such excess from the date of taking to the date of payment, together with costs and a reasonable appraisal fee of $800.
WILLIAM C. BIELUCH STATE TRIAL REFEREE