[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the defendant's assessment of damages dated October 8, 1985 in the amount of $20,700.00, filed in accordance with Conn. Gen. Stats. 13a-76.
The taking by the defendant involved real estate in the CT Page 5031 City of Norwalk described as follows:
 EASEMENT AREA — an easement for highway purposes and its appurtenances, approximately 0.02 acres situated on the southeasterly side of present U.S. Route 7, just north of the Merritt Parkway and bounded;
 N — by land n/f Donald St. Johns, 370 feet, more or less;
 E — by land n/f Sam Toobin, et al; Abraham Tuckman; Teuophalm Corp., and Donald T. Kellaher, et al, 400 feet, more or less;
 S — by land n/f Union Trust Co., 400 feet, more or less;
 W — by U.S. Route 7, 379 feet, more or less, to a point and place of beginning.
Arthur Oles, appraiser for the defendant, had originally inspected the property on February 7, 1985, and using market data, arrived at a value of the property as $12.50 per sq. ft., resulting in a fair market value before the easement of $1,884,000.00 (rounded). He arrived at a figure of $1,873,600.00 fair market value after the easement. The resulting damage figure for the taking was $10,400.00. At the hearing, Oles, because of an inflationary market, revised his damage figure upward to $20,700.00, as of October 8, 1985.
Harold Hillman, appraiser for the plaintiff, also using market data arrived at a square footage value of the plaintiff's property at $14.30 per sq. ft. This resulted in a before taking fair market value of $2,200,000.00 (rounded). However, he had misunderstood the taking to consist of 0.09 acres (instead of 0.02 acres) and this led him to arrive at the after taking value of $1,995,000.00, leaving his opinion of the damage resulting from the taking to be $205,000.00. Again, however, this figure included a 5% "functional depreciation," which Oles did not include and which Oles asserted was not applicable because, in his opinion, such concept only applied in relation to buildings, not when only land was involved. CT Page 5032
However, when Hillman discovered that the taking consisted of only .02 acres, he had to revise his figures, resulting in an after-taking value of $2,035,000.00. This reduced his damage figure to $165,000.00. This included what Hillman called "functional depreciation" of 5% of the remaining land. Again, however, the revised damage figure of $165,000.00 is based on a miscalculation. The before-taking square footage multiplied by $14.50 per sq. ft. totals $2,155,267.00 for the before-taking value. Based on a taking of .02 acres, the after-taking value totals $2,142,812.00, resulting in damages for the taking in the amount of $12,455.00. Adding his "functional depreciation" of 5% leaves a resulting damage figure of $119,564.00 ($12,455.00 + $107,109.00).
The difference in the respective values of the actual land taken is not a significant factor in the dispute in this case. The parties have locked horns over the concept of "functional depreciation."
This court does not intend to engage in a semantic discussion of what is meant by "functional depreciation." The court is satisfied that for all practical purposes this should be considered to be any severance damages to the remaining tract after a partial taking. The issue in this case, therefore, is whether there is such severance damage.
The court is satisfied that whenever there is a partial taking, albeit, a minimum taking such as occurred in this case, there is the possibility that such severance damage will result. The court cannot adopt an "unduly restrictive approach" which might lead it "to overlook several elements of severance damages that might reasonably affect the price that a buyer would be willing to pay for the plaintiffs property". . . . "That a potential consequence of a taking has not been manifested at the time of trial does not, however, preclude recovery." Alemany v. Commissioner of Transportation, 215 Conn. 437, 446.
"All possibilities that would affect market value are relevant." Alemany, supra at pg. 445.
Subject property was located on Route 7 in Norwalk just north of the Merritt Parkway in a very busy, heavily traveled commercial corridor and has been described as the only parcel of four acres or more available for commercial development in said corridor. The plaintiff's family had originally acquired this CT Page 5033 parcel in 1959. At said time, as described in plaintiff's brief, the property was "burdened with a large continuous mass of bedrock, extending precipitously upward towards the rear of the property." Gradually, over a period of some twenty years, the family slowly improved the property by blasting, rock removal, leveling and grading to a depth of approximately 250 feet of its 400 feet depth from Route 7. Subsequent to the taking on October 8, 1985, the property was sold to a purchaser for development of a motel site.
Under such circumstances the court must consider possibilities such as the state paving over the small area taken to extend the travel portion of Route 7 over the easement area, further blasting and rock removal from the rear of the property, the possible loss of some parking area abutting Route 7, and, in general, the limitations that might be placed on the remainder by local zoning rules and regulations. Making a distinction between an easement and a taking in fee, it was Mr. Oles' position that a taking in the form of an easement carried with it no implications of damage to the remainder of the property, a position encouraged by the Department of Transportation, hence no impetus to explore the possibility of any restrictive impact on the remainder. The court finds that such should have been considered by Mr. Oles.
The issue still remains as to the percentage effect on the remainder. Mr. Hillman assessed it at 5%, mainly, because the taking affected the remainder by reducing the amount of available commercial space. In his view, "better if bigger." He was unable, however, to explain precisely how the size of a motel might be affected, i.e., the number of rooms, parking spaces, etc.
The court concedes the difficulty in attempting to arrive at a precise figure for severance damage in almost any case. Plaintiff's counsel has realistically observed that in cases of eminent domain, damages are what the court says they are. Based on the strong language of Alemany v. Commissioner of Transportation, supra, at pg. 445, "that the landowner is entitled to compensation for severance damage that might result from prospective uses of the easement as well as the damages immediately flowing from the presently contemplated highway improvement project for which the land was taken," and the further statement that; "all possibilities that would affect market value are relevant" (emphasis supplied), this court finds CT Page 5034 that the plaintiff is entitled to severance damage to the remainder of its property, and assesses the amount at 1% of such remainder.
With respect to the area taken by the easement after revising his figures upward to the date of taking, October 8, 1985, Mr. Oles found the fair market value of the subject property before the taking to be $3,768,000.00; after the taking to be $3,747,300.00, and arrived at a fair market value of the taking to be $20,700.00. The court will accept Mr. Oles' testimony with respect thereto. To this, should be added 1% of the remainder value of $3,747,300.00, or $37,470.00. Due to the unavailability of plaintiff's appraiser, it was agreed that interest on any award would cease on November 1, 1991, and resume from the date of the commencement of the trial to the date of payment. The plaintiff has already received an amount deposited in the sum of $10,400.00.
Accordingly, judgment may enter for the plaintiff to recover as damages the amount of $47,770.00, together with interest at the statutory rate from October 8, 1985 to November 1, 1991 and from March 29, 1993 to the date of payment. An amount of $1,000.00 for the plaintiff's appraiser is allowed.
BELINKIE, JUDGE REFEREE