## The New York, New Haven and Hartford Railroad Company vs. The City of New Haven.

Third Judicial District, Bridgeport, October Term, 1908.
Baldwin, C. J., Hall, Prentice, Thayer and Gager, Js.

The difference between the value of an entire tract of land before, and of the remaining portion after, a part thereof, or an easement in such part, has been taken for public use, is the measure of the damages or just compensation for such taking.

In the present case a highway extension was cut through the land of a railroad company at such a grade as to require the construction of a retaining wall next the street in order to support the adjacent land used by the railroad company for freight, switching and spur track purposes. *Held:*—

1. That the cost of building such a wall was a damage incident to and necessarily involved in the taking of the railroad property for highway uses; and that as the municipality did not propose to build the wall, the expense of its construction should be allowed the railroad company as a part of its just compensation.

2. That the fact that the railroad commissioners required the highway to pass under the main line of tracks, and that their order thus involved the cut in the adjacent railroad land, did not relieve the city from its liability to make just compensation for the property actually taken in order to comply with its terms.

3. That the possibility that the railroad company might not build the retaining wall and might abandon the use of its side tracks were contingencies which could not be considered by those charged with the duty of assessing damages for the property taken under the right of eminent domain; and that in the absence of any evidence to the contrary, it might be assumed that the uses theretofore made of that property would be permanently continued.

When property already devoted to one public purpose is to be in part appropriated to another, the interference with the earlier use should be as little as is reasonably consistent with the attainment of the new purpose.

The standard of value of property taken on condemnation is its value for the purpose to which it *is* then being applied, or its value for the purpose to which it could, under then existing circumstances, be most advantageously applied.

Argued November 5th, 1908—decided January 27th, 1909.

Application to the Superior Court in New Haven

County, to review an assessment of compensation by the board of aldermen of the defendant, to the plaintiff, on account of the extension of a highway over its land; the court (*Roraback, J.*) increased the compensation, and the city appealed to this court. *No error.*

*Edward H. Rogers,* with whom was *Edward P. O'Meara,* for the appellant (defendant).

*Harry G. Day* and *Benjamin I. Spock,* for the appellee (plaintiff).

BALDWIN, C. J.   The city of New Haven, by its board of aldermen, ordered an extension of Humphrey Street, with a width of sixty feet, across the main line of the plaintiff's railroad, and through and across its station at Cedar Hill.   On its application, the railroad commissioners, under General Statutes, § 3710, ordered that the street, as thus to be extended, should be constructed under the railroad.   The city authorities thereupon assessed the damages thus accruing to the railroad company at $5,527.   The company applied to the Superior Court for a review of this action, and the court raised the amount of the compensation to be paid to $32,350.

The addition thus made was for what would be the expense to the company of constructing a retaining wall on its own land, immediately adjacent to the street as extended, and for temporary support to certain side tracks on this land while in use during the construction of the wall.   These tracks were formerly part of the main line of the Shore Line Railroad Company, but now end at Ferry Street, a few blocks east of the grounds around the Cedar Hill station.   They pass from those grounds over James Street by a bridge.   They are used for switching purposes and to furnish a connection with a large manufacturing plant now situated on the easterly side of James Street, and would furnish such a connection with any other factories or es-

tablishments which may be located, in the future, on land adjacent to the tracks between James and Ferry streets, which is now unoccupied. To use them for any purposes, after the extension of the street, would be impossible without such a retaining wall as is above described, and it does not appear that the damages could be reduced by the removal of the side tracks to any other place where they could be used to equal advantage for the purposes of the railroad.

By its charter, the city could take "any property or property rights" needed for the purpose of extending any street "upon payment of just compensation under the rules governing the right of eminent domain." 13 Special Laws, p. 427, § 135. By General Statutes, §§ 3710, 3711, it has implied power to construct highways across railroads. It could, therefore, as it did, take by condemnation proceedings the right to extend Humphrey Street across the appellee's railroad and through its station building. It is one of the general rules governing the right of eminent domain, that just compensation for taking a part of a parcel of land, or an easement in such a part, is to be ascertained by comparing the value of the entire parcel before the taking with the value of what remains after the taking, and in view of the new conditions created by the taking. If the latter of these two values be less than the former, the amount of the difference measures the damages to be paid.

In the case at bar, after the taking, certain railroad tracks would become incapable of use without further support than that afforded by the soil beneath them, which had been previously sufficient. These tracks are of great value for the purposes of the railroad. When property already devoted to one public purpose is to be in part appropriated to another, the interference with that previously served must be as little as is reasonably consistent with the attainment of the new purpose. The railroad

company was therefore entitled to the continued use of its side tracks, for they would be outside the limits of the street as extended. Being so entitled, it had the right to demand that the city should either make such use safe by shoring up the soil beneath them, or pay the expense of providing proper means of supporting them by structural changes in the land adjacent to the street, in which it did not seek to acquire an easement. The city not having proposed to do any such work itself, it was proper for the Superior Court to require it to pay the expense thus necessarily thrown upon the railroad company.

The question is not whether, had no part of the property or rights of the company been taken, damages of this nature could have been awarded. They have been allowed as being the direct effect of taking away some of its property rights in a part of an entire parcel of land, which had been previously appropriated to one and the same use. Such damages are incident to and necessarily involved in the taking of the property right. See *New York & N. E. R. Co.* v. *Waterbury*, 60 Conn. 1, 10, 22 Atl. 439.

It is immaterial that the cut in the railroad land was required by the order of the railroad commissioners, because necessary to make the grade of the street outside the bridge a proper one as related to the grade under the bridge prescribed by them. This order could not protect the city from liability to make just compensation for property actually taken in order to comply with its terms. Had the street, at the point in question, been laid out with such a width as to allow for the formation of a permanent slope on either side of the sixty-foot roadway, it would have been necessary to include in the damages to be paid the value of the land thus taken for the purposes of the slopes. When it took a right over a less width of land, the extension of the street over which necessarily involved a fall of the adjoining soil, the city came under a corresponding duty to indemnify the company for the resulting loss.

It is true that the company may never build the retaining wall, and may, to-morrow, abandon the further use of the side tracks for the support of which that wall would be necessary. But possibilities of such a nature cannot be contemplated by those charged with the duty of assessing damages for property taken under the right of eminent domain. They must estimate them by the standard of its value for the purposes to which it is being applied, or of its value for the purposes to which it could, under the existing circumstances, be most advantageously applied, if this be a greater sum. *Boom Co.* v. *Patterson*, 98 U. S. 403. In respect to property so long appropriated to and in use for railroad purposes and so adapted to other similar uses in connection with factories, which might be built hereafter along the line, it is to be assumed, in the absence of evidence to the contrary (of which there was none), that its devotion to railroad uses will be permanently continued.

There is no error.

In this opinion the other judges concurred.