[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On February 1, 1988, the Water Pollution Control Authority of the Town of Ellington (Ellington) acquired by condemnation in the name of Ellington, pursuant to the provisions of Conn. Gen. Stat. sec. 7-248, a permanent easement in the plaintiff's land. The easement interest was acquired to enable the condemnor to construct a sanitary sewer line. This sanitary sewer line crosses, inter alia, two adjoining parcels of land in the Crystal Lake section of Ellington. One of the parcels, the subject of this memorandum of decision, is an unimproved lot. It is designated as Lot No. 21 on Exhibit 4; is a parallelogram, measuring 50 feet on its easterly and westerly boundary lines and 154 feet on its northerly and southerly boundary lines; is bounded on the west by White Road; and is known as 89 White Road. The permanent easement interest in this parcel will be referred to herein as "the Lot No. 21 Easement."
The second parcel (the subject of the memorandum of decision in CV 88 00040611 S) has a frame, ranch-type dwelling on it. This parcel is designated as Lot No. 20 on Exhibit 4; is a parallelogram, measuring 50 feet on its easterly and westerly boundary lines and 154 feet on its northerly and southerly boundary lines; is bounded on the west by White Road; and is known as 91 White Road. Ellington acquired both a permanent easement interest and a temporary easement interest in this parcel.
The cases involving the condemnation of easement interests in portions of these two parcels were heard at the same time, and the parties agreed that the court could consider all evidence as the evidence in each of the cases. After the hearing, the court requested counsel for the parties to obtain a more precise description of the area subject to the easement interests. Thereafter, the parties stipulated that three additional exhibits, Nos. 4, 5, and 6, be admitted into evidence, and CT Page 1675 further stipulated that exhibits Nos. 5 and 6, which amend the descriptions in the original Certificates of Taking, are correct and accurate descriptions of the easement and easement areas acquired, and describe the same areas as the areas described in the original Certificates of Taking.
 I
By an appeal dated July 27, 1988, the plaintiff appealed from a Statement of Compensation that Ellington had filed on February 1, 1988, with respect to the Lot No. 21 Easement. The Statement of Compensation determined that $1900 is the amount of damages sustained by the plaintiff as a result of Ellington's acquiring the Lot No. 21 Easement. The plaintiff has received the $1900. In her appeal, she alleges that that amount is inadequate compensation for the Lot No. 21 Easement. The appeal has been referred to me, as a state trial referee, for a hearing and judgment. In the course of the hearing, the court heard testimony and received a report from the appraiser for the plaintiff, heard testimony and received two reports from the appraiser for Ellington, and heard testimony from an employee of an engineering firm. The court also had the benefit of viewing the premises and of the briefs submitted by the parties.
 II
The Lot No. 21 Easement was acquired for the purpose of "constructing an underground sewer line, tributary connections and appurtenant work in any part of said easement area including the right to clean, repair, replace and care for said sewer facilities, together with the right of access to and from said easement areas." The northerly boundary of the Lot No. 21 Easement coincides with a portion of the northerly boundary of Lot No. 21; the westerly boundary of the Lot No. 21 Easement coincides with a portion of the easterly line of White Road. Easterly from White Road, the Lot No. 21 Easement is 20 feet wide for 105.8 feet, the northerly and southerly lines being parallel to each other. At a point 105.8 easterly of White Road, the southerly line of the Lot No. 21 Easement proceeds northeasterly for 37.6 feet to a point in the northerly line of the Lot No. 21 Easement; that point is 137.6 feet easterly of White Road, measured on the northerly line of Lot No. 21. The total area of the Lot No. 21 Easement is 2430 square feet. The total area of Lot No. 21 is 7700 square feet. In the opinion of the appraiser for Ellington, the highest and best use of Lot No. 21 is "for residential development." The court concurs in that opinion and finds that residential development is the highest and best use of Lot No. 21. CT Page 1676
 III
"`The owner of land taken by condemnation is entitled to be paid just compensation. Conn. Const. art. 1 sec. 1. If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained of it thereafter.' Lynch v. West Hartford, 167 Conn. 67,73-335 A.2d 42 (1974)." Minicucci v. Commissioner of Transportation,211 Conn. 382, 384, 559 A.2d 216 (1989). The same before-and-after rule applies whether the "partial taking" is the taking of an easement interest or a fee simple interest. "It is one of the general rules governing the right of eminent domain, that just compensation for taking a part of a parcel of land, or an easement in such/part, is to be ascertained by comparing the value of the entire parcel before the taking with the value of what remains after the taking, and in view of the new conditions created by the taking. If the latter of these two values be less than the former, the amount of the difference measures the damages to be paid." New York, N.H. and H.R. Co. v. New Haven, 81 Conn. 581, 583, 71 A. 780 (1909). See, also, Alemany v. Commissioner of Transportation, 215 Conn. 437,445, 576 A.2d 503 (1990) (Trial court used before-and-after test to determine damages for taking of easement: Supreme Court found error only in failure of trial court to consider certain elements of severance damages).
The appraiser for Ellington found the before-taking value of Lot No. 21 to be $11,600. The appraiser for the plaintiff found the before-taking value of Lot No. 21 to be $15000. Each appraiser cited three comparable sales, but only one of the comparable sales was cited by both appraisers. The price per square foot in that comparable sale was approximately $1.00 per square foot. Because of differences between the land sold in that comparable sale and Lot No. 21, the appraiser for Ellington made an upward adjustment in the value for Lot No. 21 to $1.50 per square foot. He then found the before-taking value of Lot No. 21 to be $11600. The appraiser for Ellington mistakenly assumed, however, that Lot No. 21 was subject to a right of way to a community well. He testified that he had made this mistake, but testified also that he ascribed minimal depreciation in value resulting from the assumed right of way. After consideration of the reports and testimony of both appraisers, the briefs of the parties, the testimony of the other witness, and the facts disclosed by the court's view of the premises, the court is of the opinion and finds that the before taking fair market value of Lot No. 21 was $12500.
On the question of the percentage of depreciation in the value of the easement area resulting from the Lot No, 21 Easement, CT Page 1677 the two appraisers were quite close. The appraiser for the plaintiff found the depreciation to be about 47.3% ($1.90 per square foot before; $1.00 per square foot after). The appraiser for Ellington found the depreciation to be 50% ($1.50 per square foot before; $.75 per square foot after). Because the $1.50/$.75 ratio corresponds more closely to the court's opinion as to the before-and-after per square foot values, the court finds the percentage depreciation in the value of a square foot of the Lot No. 21 Easement to be 50%. The before taking value of the 2430 square feet was, rounded, $3945 (31.55% of $12500). The after-taking value of the 2430 square feet, being 50% of the before-taking value, is, rounded, $1972. If the plaintiff sustained no severance damages from Ellington's acquiring the Lot No. 21 Easement, an issue to be considered hereafter, the court finds the after-taking value of Lot No. 21 to be $10528. The court finds the loss in fair market value of the plaintiff's land resulting from Ellington's acquiring the Lot No. 21 Easement, independently of and in addition to severance damages, if any, that the plaintiff may have sustained as a result of the taking, is $1972.
 IV
"When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of a portion of the property causes." Alemany, supra, at 444. (Rule as to severance damages applies where interest taken by condemnation is an easement interest.) See, also, New York, N. H. H.R. Co., supra, at 583. (Just compensation) is to be determined "in view of the new conditions created by the taking.")
The appraiser for Ellington testified that he found no severance damages, essentially on the ground that the same uses could be made of the remaining land after the taking as were made before the taking. In the opinion of the court, that approach to severance damages ignores both the "new conditions created by the taking" and the effect of those "new conditions" on the value of the remaining land.
The appraiser for the plaintiff, on the other hand, wrote in his report (p. 15) of the effect of the taking on the value of Lot No. 21. "There is an adverse effect on the market value of the site, in this appraiser's opinion, for the following reasons: a) The permanent easement located on site prevents use of this area for any permanent structures. b) Taking of permanent easement reduces the market value of site due to its location, occupying over 30% of land area." CT Page 1678
Reason a) has to be qualified if, as is probable, a side yard of 10 feet would be required. In that event, a permanent structure could not be located on that 10 feet even before the taking. Nevertheless, it is true that the Lot No. 21 Easement prevents construction on a 10-foot strip running easterly from White Road for more than two-thirds of the length of Lot No. 21. Inasmuch as the entire width of Lot No. 21 is only 50 feet, the loss of these 10 feet is a substantial loss of the area available for construction, particularly if, as is probable, a side yard of 10 feet would be required on the southerly boundary of Lot No. 21.
The appraiser for the plaintiff was of the opinion that the "adverse effect" of the taking caused a decline in the per square foot market value of the remaining land from $1.90 per square foot to $1.00, a percentage decline of about 47.3%
One other minor "adverse effect" of the taking seems to the court to warrant mention, although not specifically alluded to by the appraiser for the plaintiff. Under the terms of the Lot No. 21 Easement, Ellington is not required to seed, or even to level, the surface of the easement area. Within the easement area, Ellington has installed two manholes, each with capitals extending a few inches above the surrounding area. The result is an unsightly and disfiguring 20-foot strip on the surface of Lot No. 21, running easterly from White Road for more than two-thirds of the length of Lot No. 21.
The court is of the opinion and finds that the "new conditions" caused by the Lot No. 21 Easement would cause a willing and reasonably-informed potential buyer and a willing and reasonably-informed seller to discount substantially the value of the remaining land, as a result of the Lot No. 21 Easement. The court finds that the decline in the value of the remaining land, as a result of the taking of the Lot No. 21 Easement, is 30% of the before-taking value of the remaining land, and that the plaintiff has sustained severance damages of 30% of that value. The before-taking value of the remaining land being $8555 (68.44% of $12500), the severance damages sustained by the plaintiff are $2566.
 V
The plaintiff's award of damages being greater than the amount determined in the Statement of Compensation, the plaintiff is entitled have the costs include appraisal fees, under the provisions of Conn. Gen. Stat. sec. 8-133. The court finds that reasonable appraisal fees for the appraisal of Lot No. 21 for the appraiser for the plaintiff are $375. CT Page 1679
 VI
Pursuant to Paragraph No. 4 of the stipulation by the parties, the court directs the defendant, Town of Ellington, to prepare an Amended Certificate of Taking for signature by the Clerk of Court and recording upon the land records.
 VII
In sum, the court finds that the plaintiff has sustained, as a result of the taking of the Lot No. 21 Easement by the defendant, damages of $1972, plus severance damages of $2566 for the diminished fair market value of the plaintiff's remaining land. The court finds that that the after-taking fair market value of the plaintiff's land is $7962 and that the before-taking value of the plaintiff's land was $12500, and that, therefore, the after-taking fair market value of the plaintiff's land is $4538 less than the before-taking value of the plaintiff's land. Judgment may enter, therefore, for the plaintiff in the amount of $4538, less the amount of $1900 already paid, or an excess of $2638, with statutory interest, which the court finds is fair, just and reasonable, from the date of the taking to the date of payment, on such excess, and costs (which shall include appraisal fees of $375.)
RUBINOW STATE TRIAL REFEREE CT Page 1680
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 1681
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 1682
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 1683
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 1684
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 1685