[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On May 7, 1990, the plaintiffs were the owners of a parcel of land in Hebron. On that day, the Water Pollution Control Authority of Hebron acquired by condemnation in the name of Hebron, pursuant to the provisions of Conn. Gen. Stat. sec. 7-248, interests in the following three portions of the plaintiffs' land: (1) a fee-simple interest in one portion, hereinafter designated as Portion F; (2) a permanent-easement interest in another portion, hereinafter designated as Portion P; and (3 a temporary-easement interest in a third portion, hereinafter designated as Portion T.
Hebron zoning regulations provide for issuing special permits for public-use sewerage systems, and Hebron acquired the three interests for the general purpose of "constructing and operating a sewerage system." The permanent-easement interest was acquired "for the purpose of installing, maintaining, operating, repairing, and replacing a sewer main and related facilities" on and under Portion P. The temporary-easement interest was acquired in order to enter upon Portion T "for the purposes of constructing and installing a sewer pumping station and related facilities during the period of their construction and installation." The stated purpose of the temporary-easement interest does not specify the duration or the temporary-easement interest.
Before Hebron acquired the interests, the plaintiffs' land CT Page 6701 consisted of 1.5 acres, located in a Residence Zone (R-1) on the east side of Church Street (Conn. Route 85), about a mile north of Amston. On the land, but not within any of the taken portions, is a one-story wood-frame building, about 3600 square feet in area, used for light manufacturing. That use is not a permitted use in an R-1 Zone; that use on the plaintiffs' land, however, is a permitted nonconforming use, the plaintiffs' land having been used for that purpose before it was zoned as R-1. Sections of the land have been paved and gravelled for use by employees and other persons having business on the land. On February 13, 1990, the Zoning Commission of Hebron voted not to change the R-1 zoning of the plaintiffs' land.
By an appeal dated August 29, 1990, the plaintiffs appealed from a Statement of Compensation that Hebron had filed on March 26, 1990, regarding Hebron's condemnation of the interests in Portion F, Portion P and Portion T. That statement of Compensation determined that $9,000 is the amount of damages sustained by the plaintiffs as a result of Hebron's condemnation of those interests. The Statement of Compensation also listed the names of two banks as the names of "persons having a record interest" in the property being acquired by condemnation. That listing is required by Conn. Gen. Stat. sec. 8-129 (that section and sections 8-130
through 8-133 being made applicable to the present proceeding by Conn. Gen. Stat. sec. 7-248). The judgment or order provided for in Conn. Gen. Stat. sec 8-130 and sec. 8-132a, to determine the equity of each of the "persons" having an interest in the deposit, has not been entered, however. Hence, although, as required by Conn. Gen. Stat. sec. 8-129 and sec. 8-130, Hebron has deposited the $9,000 with the Clerk of Court, the plaintiffs nave not withdrawn the $9,000 deposit.
In their appeal, the plaintiffs allege that $9,000 is inadequate compensation for the three interests that Hebron has acquired by condemnation. The appeal has been referred to me, as a state trial referee, for a hearing and judgment. In the course of the hearing, the court heard testimony and received a report from the appraiser for the plaintiffs and the appraiser for Hebron; and heard testimony from one of the plaintiffs and from the Wetlands Agent for Hebron. The court also had the benefit of viewing the premises and of the briefs submitted by the parties.
"`The owner of land taken by condemnation is entitled to be paid just compensation. Conn. Const. art 1 sec. 1. If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained thereafter.' Lynch v. West Hartford,167 Conn. 67, 73, 335 A.2d 42 (1974)." Minicucci v. Commissioner of Transportation, 211 Conn. 382, 384, 559 A.2d 216 (1989). The same before-and-after rule applies whether the "partial taking" is the taking of a fee-simple interest or an easement-interest. "It is one of the general rules governing the right of eminent domain, that just compensation for taking a part of a parcel of land, or an easement in such CT Page 6702 a part, is to be ascertained by comparing the value of the entire parcel before the taking with the value of what remains after the taking, and in view of the new conditions created by the taking. If the latter of these two values be less than the former, the amount of the difference measures the damages to be paid." New York, N.H. and H.R. Co. v. New Haven,81 Conn. 581, 583, 71 A. 780 (1909). See, also, Alemany v. Commissioner of Transportation, 215 Conn. 437, 445, 576 A.2d 503 (1990) (Trial court used before-and-after test to determine damages for taking of easement; Supreme Court found error only in failure of trial court to consider certain elements of severance damages).
In arriving at a before-taking value of the plaintiffs' land, both appraisers made a valuation of the land as if it were unimproved residential land. That valuation of the appraiser for Hebron was $50,000 per acre, or $75,000 for the 1.5 acres. That valuation of the appraiser for the plaintiffs was $56,882 per acre, or $85,323 for 1.5 acres. The $56,882 valuation is based on an addendum in that appraiser's report; that addendum contains a list of 10 sales of residentially-zoned land in Hebron, showing an average price per acre of $56,882. After reviewing the reports of the appraisers, the testimony, and viewing the premises, the court is of the opinion and finds that the fair market value of the plaintiffs' land as of the day of the taking, as unimproved residential land, is $85,323 for the 1.5 acres.
Both appraisers agreed that the highest and best use of the plaintiffs' land is the existing permitted nonconforming use, and the court finds that that is the highest and best use. The appraiser for Hebron made no adjustment to his residential-use valuation for the value of that permitted nonconforming use. The appraiser for the plaintiffs, however, made such an adjustment. He increased the residential-use valuation by 70%, basing that 70% on his finding of the amount of the premium that had been paid for commercial or industrial land, compared with residential land, in the adjoining town of Colchester. That finding does not persuade the court, primarily because of the difference in utility and desirability between (a) land that is zoned commercial or industrial and (b) land, such as the plaintiffs' land, that is zoned residential but has a permitted nonconforming use. The court is of the opinion, and finds, that the permitted nonconforming use increases the value of the plaintiffs' land by 20% over its value as residential land, thereby increasing the fair market value of the 1.5 acres by $17,064, to a total of $102,387, or, rounded, $1.57 per square foot. That a nonconforming use may possess an independent value was recognized in this state in Gebrian v. Bristol Redevelopment Agency, 171 Conn. 565, 572,370 A.2d 1055 (1976). Other jurisdictions also have recognized that independent value. See In re Port of New York Authority [Lincoln Tunnel],2 N.Y.2d 296, 159 N.Y.S.2d 825, 140 N.E.2d 740 (1957) (premium of 20% approved for nonconforming parking-lot use.)
The southern part of the plaintiffs' land borders on Raymond Brook, and, as of May 7, 1990, that part had been designated as being CT Page 6703 subject to Inland Wetlands regulation. The court has considered whether that designation affected the fair market value of any of the plaintiffs' land. For the following reasons, the court is of the opinion, and finds, that that designation, as of May 7, 1990, did not affect the fair market value of the plaintiffs' land: 1) Before the Wetlands-designation was made, the plaintiffs had completed the improvements on their land and had established the uses for all sections of it, including the Wetlands designated areas. 2) The value that a prospective purchaser would allocate to the Wetlands-designated areas would be determined by a) the proximity of those areas to Raymond Brook and b) by the probability that the zoning board would not change the zone of the land (as evidenced by the denial of February 13, 1990). Those two considerations would make of no-significance any consideration of the Wetlands-designation.
 III
Portion F consists of 5464 square feet, or .13 of an acre. The value of those 5464 square feet at the rate of $1.57 per square foot is, rounded, $8,578. By taking Portion F, Hebron has reduced the value of the plaintiffs' land, as unimproved vacant land, by $8,578.
Portion P consists of 1492 square feet, or .03 of an acre. It is triangular in shape, and lies immediately south of Portion F. Its location is such that it is of only minimal utility to the remaining portion of the plaintiffs' land. The court is of the opinion, and finds, that by taking the permanent-easement interest in Portion P, Hebron has reduced the value of Portion P, as unimproved vacant land, by $1.25 per square foot for the 1492 square feet of Portion P, a reduction in value of $1,865.
The damages that the plaintiffs have sustained from the taking of Portion F and the permanent-easement interest in Portion P are independent of and in addition to the severance damages, if any, that the plaintiffs may have sustained as a result of those takings, an issue to be considered hereinafter.
Portion T consists of 6971 square feet, or .16 of an acre. It is a strip approximately 25 feet wide adjacent to, and parallel to, Portions F and P. The court is of the opinion, and finds, that by taking the temporary-easement interest in Portion T, Hebron has reduced the value of Portion T, as unimproved land, by $1,000.
The appraiser for the plaintiffs, in his report, included an item of $900 for a reduction of 3000 square feet in the "gravel parking" area. This is the only evidence concerning this item, and the court does not find this item proved. The other items of diminution in value that the court has found above, resulting from the taking of Portion F and of the easement-interests in Portions P and T, total $11,443; the court finds that by those takings Hebron reduced the fair market value of the plaintiffs' land by $11,443, independent of and in addition to the severance damages, if any, that the plaintiffs may have sustained as a CT Page 6704 result of those takings.
 IV
"When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of a portion of the property causes." Alemany, supra, at 444. After the taking, the plaintiffs' remaining property consists of 1.37 acres, of which .03 of an acre are subject to a permanent-easement and, in the opinion of the court, cannot properly be considered as "remaining property" for purposes of determining severance damages. The remaining 1.34 acres have an irregular shape, the frontage being interrupted by Portion F for 100 feet and by Portion T for 63 feet. Hebron's sewer pumping station and maintenance garage will be located almost in the center of the frontage of the remaining property. Other facilities, including vent pipes, will be installed above ground. Both appraisers agreed that the takings have caused diminution in the value of the remaining property. The appraiser for Hebron estimated the diminution at 10%, and the appraiser for the plaintiffs estimated the diminution at 15%. The court is of the opinion, and finds, that the diminution is more in the desirability of the remaining property than in its utility, and that the diminution in value of the remaining property, including the improvements, resulting from severance is 10% of the value of the plaintiffs' land. The 1.34 acres of remaining property contain 58,370 square feet. At $1.57 per square foot, the total value of the remaining property is, rounded, $91,641. The court is of the opinion, and finds, that, as a result of the takings by Hebron, the plaintiffs have sustained severance damages of $9,164, independent of and in addition to any other damages sustained.
 V
The damages to which the plaintiffs are entitled being greater in amount than the amount determined as compensation in the statement of Compensation, the plaintiffs are entitled to have the costs include appraisal fees, under the provisions of Conn. Gen. Stat. sec. 8-133. The court finds that reasonable appraisal fees for the appraiser for the plaintiffs are $2,500.
 VI
Under Conn. Gen. Stat. sec. 8-130, "the court shall enter judgment against the municipality for the amount of the deficiency," i.e. for the amount by which the damages exceed the deposit. The court will enter that judgment but, because the equities of the plaintiffs and the banks have not yet been determined, the judgment will have to provide that the deficiency be paid to the Clerk of the Superior Court for the Judicial District of Tolland, to be added to the $9,000 deposit. Conn. Gen. Stat. sec. 48-21, which provides for that procedure, does not specifically apply to proceedings under Conn. Gen. Stat. sec. 7-248. The purpose of the notice-requirements in Conn. Gen. Stat. sec. 8-129, however, is to protect the interests of an encumbrancer of land taken for public use (see Palo v. Rogers, 116 Conn. 601, 604, 165 A. 803 (1933)) and the judgment can provide that protection by providing for payment of the deficiency to be made in the manner set forth in Conn. Gen. Stat. sec. 48-21.
 VII
In sum, the court finds that the plaintiffs have sustained, as a result of the taking by Hebron of the fee-simple interest in Portion F, the permanent-easement interest in Portion P, and the temporary-easement interest in Portion T, damages of $11,443, plus severance damages of $9,164 for the diminished fair market value of the plaintiffs' remaining land. The court finds that the after-taking value of the plaintiffs' land is $81,780 and that the before-taking value of the plaintiffs' land was $102,387, and that, therefore, the after-taking value of the plaintiffs' land is $20,607 less than the before-taking value of the plaintiffs' land. Judgment may enter, therefore, against Town of Hebron in the amount of $20,607, less the deposit of $9,000 already paid, a deficiency of $11,607, with statutory interest, which the court finds is fair, just, and reasonable, from the date of taking to the date of payment, on such deficiency, and costs (which shall include appraisal fees of $2,500); and judgment may further enter that Town of Hebron pay the deficiency of $11,607, and the statutory interest, to the Clerk of the Superior Court for the Judicial District of Tolland, to be added to the deposit of $9,000, the total sum of the deposit, the deficiency, and the statutory interest to be held by said Clerk of Court subject to the further orders of the court.
State Trial Referee
CT Page 6705