[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By an appeal dated August 13, 1990, the plaintiff is appealing from a Statement of Compensation dated May 3, 1990, filed by the defendant, pursuant to the provisions of Conn. Gen. Stat. sec. 7-248. In that Statement of Compensation, the defendant determined that $3,500 is the compensation that should be paid to the plaintiff for three interests that the Water Pollution Control Authority of Hebron acquired by condemnation, in the name of the defendant, in the plaintiff's land in Hebron. In its appeal, the plaintiff alleges that compensation of $3,500 is inadequate. The appeal has been referred to me, as a state trial referee, for a hearing and judgment. In the course of the hearing, the court heard testimony and received a report from the appraiser for the plaintiff and the appraiser for the defendant; and heard testimony from attorneys concerning the title to the plaintiff's land, from an engineer, and from a zoning agent. The court also had the benefit of viewing the premises and their vicinity and of the briefs submitted by the parties.
The plaintiff's land in which the interests were condemned is a lot in a subdivision. The lot consists of about 5250 square feet, measuring 50 feet in width and averaging 105 feet in length. It is bounded on the north by the shore of Amston Lake and on the south by Deepwood Drive, also designated as "Deep Wood Drive" on the subdivision maps hereinafter referred to. The lot is numbered "49" on those maps and will be referred to hereinafter as "Lot 49." The interests taken by condemnation are interests in three portions of Lot 49, as follows: (1) a fee-simple interest in one portion, hereinafter designated as Portion F, consisting of about 1422 square feet; (2) a permanent-easement interest in another portion, hereinafter designated as Portion P, consisting of about 2450 square feet, for the purpose of installing and servicing sewer mains and a driveway on and under Portion P; and (3) a permanent-easement interest in a third portion, hereinafter designated as Portion PD, consisting of about 1225 square feet, for the purpose of drainage, relating to the installation and servicing of a sewer pumping station and related facilities, on or under Portion PD. Hebron acquired the interest in the CT Page 10026 three portions for the purposes of constructing and operating a sewerage system. Two of the portions, Portion P and Portion PD, are stated in the Statement of Compensation to be "subject to the right of the Owner and others to pass and repass from and to Deepwood Drive and Amston Lake.
 I
An issue in this appeal, antecedent to the issue of fair and just compensation for the interests taken by condemnation, is whether, before the taking, Lot 49 was encumbered by rights-of-way over it to the shore of Amston Lake, which is privately-owned. The plaintiff claims that Lot 49 was not so encumbered and that the before-taking fair market value of Lot 49 was its value as a site for a residence. The defendant claims that Lot 49 was so encumbered; that the rights-of-way are appurtenant to other lots in the subdivision; that the lot was not usable as a site for a residence; and that the before-taking fair market value of Lot 49 was its value as a lot encumbered by those rights-of-way.
Under a provision of Conn. Gen. Stat. sec. 8-129 (that section and sections 8-130 through 8-133 being made applicable to the present proceeding by Conn. Gen. Stat. sec. 7-248), the Statement of Compensation should include "the names of all persons having a record interest" in the property being condemned. Under this provision, the Statement of Compensation should have included the names of the record owners of the lots that the defendant claimed have the appurtenant right-of-way; the judgment would affect that right-of-way if the judgment sustained, in whole or in part, the claim of the plaintiff. Counsel for the defendant, however, as an alternative to undergoing the expense of identifying the individual owner of each of perhaps hundreds of lots, elected not to attempt to list the names of the owners of those lots, and, instead, elected orally at the commencement of the trial to have Hebron bear the risk of any action that might be brought as a result of the failure to list the names of those owners. In its post-trial brief (p. 4), the defendant confirmed that Hebron "has elected to undertake the risk of future claim by any" persons that ought to have been "joined" by being named in the Statement of Compensation.
Neither the plaintiff nor the defendant made a motion to have the case continued either to allow the defendant to comply with Conn. Gen. Stat. sec. 8-129, or to bifurcate the antecedent issue and the issue of damages. In the absence of that motion, the court proceeded, without objection from counsel, to try both issues. Given the defendant's unequivocal undertaking of any risk resulting from the intentional omission from the Statement of Compensation of the names of owners of lots who may have a right-of-way over Lot 49, and given the waiver of any objection that either party might have had to a non-bifurcated hearing, the court is of the opinion that the court did not exceed its jurisdiction in hearing both issues in this proceeding. See Transportation Plaza Associates v. Powers 203 Conn. 364, 371, 525 A.2d 68 (1987). CT Page 10027
 II
The plaintiff acquired Lot 49 (and 22 other parcels) in 1986 by a deed from The Amston Lake Maintenance Corporation. The deed refers to three maps, of which only the first is relevant to the present litigation. That first map, referred to in the deed as "Map 1" (a copy being Exhibit 3), bears the title, "Map of Lake Amston Sections A B Preliminary Map Sept. 1934 H. E. Daggett, Civil Engineer, Meriden, Conn. Scale 1" = 100'. Developed by The Amston Lake Co." In the deed to the plaintiff, Parcel No. 7 bears the following description: "PARCEL No. 7 That certain parcel of land situated in the Town of Hebron and known as Lot No. 49, Section `A', designated a `Right of Way' as shown on said Map 1 above." In the same deed, Lots Nos. 10 and 28 (Parcels No. 5 and 6) are conveyed to the plaintiff with the identical wording, "designated a `Right of Way' as shown on said Map 1 above." On the map, all three lots bear, in addition to their lot number, the legend "Right of Way."
The subdivider's choice of lots Nos. 10, 28, and 49 for a" Right of Way" leading to the shore of Amston Lake appears to be a reasoned and purposeful choice. If we exclude both terminal lots, 17 lots intervene between Lot No. 10 and Lot No. 28, and 20 lots intervene between Lot No. 28 and Lot No. 49. Each of the three lots is located on the north side of Deepwood Drive at a point where another street in the subdivision intersects Deepwood Drive from the south. The roughly-equal intervals between the three lots and the location of the three lots provide a convenient access to the shore of Amston Lake to the residents on the south side of Deepwood Drive, a convenient access they would not otherwise have.
Lot 49 had first been designated as a "Right of Way" in the earliest map in evidence (Exhibit 1), which bears the date July, 1931. In the sixty years since then, numerous residences have been erected on lots in the subdivision, as the view of the premises and their vicinity revealed. Nevertheless, Lot 49 has remained unimproved and in constant and continuous use as a right-of-way. Indeed, the use has been so intensive that a sign had to be erected attempting to limit its use to persons entitled to use it. Furthermore, it is significant that the plaintiff's grantor did not convey Lot 49 merely by reference to the lot number; the deed specifically refers to the "Right of Way" designation in addition to the lot number. In view of that designation in the deed, the plaintiff cannot reasonably claim that it was unaware that Lot 49 had thus been specifically designated as a "Right of Way."
The above-mentioned earliest map (Exhibit 1) bears the title, "Map of Lake Amston Section A Hebron, Conn. July, 1931 Scale 1" = 100' Developed by the Amston Lake Co. H. E. Daggett, Civil Engineer, Meriden, Conn." In the lower left-hand corner of that map is a "substantially correct" certification bearing the signature "H.E. Daggett." About an inch above that certification is the following legend: "Lots 10, 28, 49 are rights of way from Deep Wood Drive to Lake Amston for the use of the CT Page 10028 owners of lots on this map westerly and southerly of Deep Wood Drive. They are not to be used by vehicles."
That legend does not appear on Exhibit 3. Does the omission of that legend on Exhibit 3 mean, for owners who bought their lots by a deed referring to the Exhibit 3 map, that the use of Lot 49 as a right-of-way is not restricted to "the owners of lots on [the Exhibit 1 map] westerly and southerly of" Deepwood Drive? The answer to that question is beyond the scope of the present proceeding. The court notes, however, that an attorney called as an expert witness by the defendant testified that it is his opinion that Lot 49 is subject to a right-of-way for owners of lots shown on both Exhibit 1 and Exhibit 3, as well as on Exhibit 2. An attorney called as an expert witness by the plaintiff testified, without being specific about the encumbrances, that he would not issue a certificate of title for Lot 49 showing it to be clear of encumbrances.
For a resolution of the previously-discussed antecedent issue in the present proceeding, the court does not have to state with precision what lot-owners have a right-of-way over Lot 49. It suffices that the court hereby finds that the evidence establishes that, before the taking, the plaintiff owned the fee interest in Lot 49; that that fee interest was encumbered by rights-of way appurtenant to "lots on [the Exhibit 1 or Exhibit 2 map] westerly and southerly of" Deepwood Drive for lot-owners who bought with reference to the Exhibit 1 or Exhibit 2 map, and, possibly, by rights-of-way appurtenant to all lots shown on Exhibit 3 for lot-owners who bought with reference to the Exhibit 3 map; that the plaintiff's title to Lot 49 was not a marketable title as a site for a residence; that the before-taking fair market value of Lot 49 was not its value as a site for a residence; that the before-taking highest and best use of Lot 49 as a non-buildable site was, in the words of the appraiser for the defendant (Exhibit 9), "for sale to the abutters;" and that the before-taking fair market value of Lot 49, encumbered by the rights-of-way, would be affected by "the limited appeal it would have to a buyer on the open market." Gentile v. Ives, 159 Conn. 443, 446,270 A.2d 680 (1970).
 III
In support of its claim that the the grantor intended to "retain complete control of the use and development of the area around Amston Lake," the plaintiff introduced into evidence a deed (Exhibit H), dated July 20, 1976, to "Lot number 170 Section A as shown on a map . . ." In the deed, the map referred to is undated, does not have a "substantially correct" certification, and bears a title that is similar in some respects to each of the three maps in evidence but does not correspond in all significant details to any one of the three. The plaintiff relies on a printed clause in that deed that reads, in part, as follows: "(A)ll right, title and interest in and to the streets, drives, parks, roads, paths and shore as laid out and shown on the plat of Amston Lake are hereby expressly reserved to The Amston Lake Co., its successors or assigns, CT Page 10029 subject, nevertheless, to a right of way to the purchaser over the same to the Public Highway; and . . . all reference to or mention of park or parks avenues, streets, drives, roads and paths are for the purpose of description only and not for the purpose of dedication . . . "
Whichever (if any) of the three "plats" in evidence "the plat of Amston Lake" in this printed clause refers to, this printed clause does not permit The Amston Lake Co, or its successors and assigns, to nullify the rights-of-way of owners who purchased by reference to the Exhibit 1 or 2 map, and, possibly, the Exhibit 3 map. There are three reasons why the plaintiff's claim is unavailing. First, by its own words, the printed clause does not purport to apply to a right-of-way. It applies only to "streets, drives, parks, roads, and paths." The omission of rights-of-way is especially significant because later in the same printed clause there is specific reference to "a right of way . . . to the Public Highway," showing that the drafter of this clause was familiar with the phrase "right-of-way" and used it whenever he intended to mean "right-of-way." Of further significance is the use of "right of way" in another part of the deed making the conveyed premises "subject to . . . (a) right of way granted to" a public utility. Second, the plaintiff introduced no evidence that the clause relied on had been included in any conveyance that was made with reference to the Exhibit 1 or Exhibit 2 map. These maps contain the previously-noted specific notation, "Note: Lots 10, 28 49 are rights of way from Deep Wood Drive to Lake Amston for the use of the owners of lots on this map westerly and southerly of Deep Wood Drive. They are not to be used by vehicles." Third, Conn. Gen. Stat. sec. 328, Revision of 1930, (predecessor to Conn. Gen. Stat. sec. 7-31) provided, in part, that when a map has been filed in the office of the town clerk with "appended thereto a certificate of the surveyor that it is substantially correct . . . [the map] shall thereupon be deemed part of the deeds referring thereto." Even if there were evidence that the printed clause was used in a conveyance of a lot with reference to the Exhibit 1 or Exhibit 2 map, the long continued use of Lot 49 as a right-of-way to Amston Lake shows that, assuming there were an inconsistency between the printed clause and the rights flowing from a purchase with reference to a map, both grantor and grantees had construed that inconsistency in favor of the existence of the right-of-way over Lot 49.
 IV
The plaintiff also claims that the defendant's willingness to "undertake the risk of not naming persons who might have rights over the lot" tends to prove that no rights exist. This claim ignores the reasoning that led Hebron to undertake the risk. Hebron undertook the risk not because no rights exist, but because even though those rights exist, counsel believed that risking the possible consequences of not naming the proper lot-owners was a course of action preferable to undergoing the expense of attempting to identify all of those lot-owners. Further, as noted previously, the Statement of Compensation specifically states that both permanent easements "are subject to the right of the CT Page 10030 owner and others to pass and repass from and to Deepwood Drive and Amston Lake."
The plaintiff makes a further claim that, as the court understands it, not naming the lot-owners means that the rights-of-way are so "limited" that, even though they exist, they would not prevent the plaintiff from using Lot 49 as a site for a residence. The plaintiff offered no evidence that, before the taking, it was feasible, legally or practically, to construct a residence on Lot 49, as then encumbered by the rights-of-way. That Lot 49 could not be used as a site for a residence as long as it was subject to the rights-of way was implicitly conceded by the appraiser for the plaintiff. In making his appraisal, he noted his "understanding" that "the right of way may be removed . . . at any time," and, in assessing the "subject site's developability," he relied on "the potential removal of the right of way." (Exhibit G, p. 6). The court finds not proved this claim that the rights-of-way are so "limited" that Lot 49 could have been used as a site for a residence before the taking.
"`The owner of land taken by condemnation is entitled to be paid just compensation. Conn. Const. art. I sec. 11. If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained of it thereafter.' Lynch v. West Hartford, 167 Conn. 67,73, 355 A.2d 42 (1974)." Minicucci v. Commissioner of Transportation,211 Conn. 382, 384, 559 A.2d 216 (1989). The same before-and-after rule applies whether the "partial taking" is the taking of a fee-simple interest or an easement-interest. "It is one of the general rules governing the right of eminent domain, that just compensation for taking a part of a parcel of land, or an easement in such a part, is to be ascertained by comparing the value of the entire parcel before the taking with the value of what remains after the taking, and in view of the new conditions created by the taking. If the latter of these two values be less than the former, the amount of the difference measures the damages to be paid." New York, N. H. and H.R. Co. v. New Haven, 81 Conn. 581, 583,71 A. 780 (1909). See, also, Alemany v. Commissioner of Transportation,215 Conn. 437, 445, 576 A.2d 503 (1990) (Trial court used before-and-after test to determine damages for taking of easement; Supreme Court found error only in failure of trial court to consider certain elements of severance damages).
The appraiser for the defendant appraised the before-taking value of Lot 49, encumbered by the rights-of-way, at $1.00 per square foot. The court concurs in that appraisal and, finding the before-taking area of Lot 49 to be 5250 square feet, the court finds the before-taking value of Lot 49 was $5,250. The court finds that by taking the fee interest in Portion (1422 square feet), Hebron has reduced the value of Lot 49 by $1,422. The court further finds that by taking permanent-easement interests in Portion P (2450 square feet) and Portion PD (1225 square feet), Hebron has reduced the value of Portion P and Portion PD by $.55 per square foot, a reduction of $2,021 for the 3675 square feet, combined, of Portion P and CT Page 10031 Portion PD. The combined reduction in value of Lot 49 resulting from the takings by Hebron totals $3,443, which the court rounds to $3,500, and the court finds that $3,500 is fair and just compensation for the interests taken by condemnation. The court further finds that the before-taking value of Lot 49 was $5,250 and that the after-taking value of Lot 49 is $1,750.
Because the amount deposited as compensation equals the amount of the fair and just compensation found by the court, the court is uncertain about the form that the judgment file should take, and what provision, if any, it should contain regarding costs. Accordingly, the court directs that counsel for the defendant draft a proposed judgment file and submit it to counsel for the plaintiff for approval. If a draft is approved, counsel are to endorse their approval on it and forward it to the clerk. If counsel are unable to agree on the form of the judgment file, counsel for the defendant is to notify the court, and the court will schedule a hearing on the matter.
Jay E. Rubinow State Trial Referee