[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By an appeal dated April 29, 1996, the plaintiffs are appealing from a "Notice of Condemnation and Assessment of Damages," dated January 29, 1996, that the defendant filed pursuant to sections 13a-73(b) and 13a-73(e) of the General Statutes. In that Notice and Assessment, the defendant determined that $10,000 is the compensation that the defendant should pay for the interests that the defendant acquired, by condemnation, in a portion of the plaintiffs' land in Andover. In their appeal, the plaintiffs allege that $10,000 is inadequate compensation. The appeal has been referred to me, as a state trial referee, for a hearing and judgment. In the course of the hearing, the court heard testimony and received a report from the appraiser for the plaintiffs and the appraiser for the defendant and heard testimony from the Town Planner of Andover. The court also had the benefit of viewing the premises in the company of counsel for each of the parties.
 I
The plaintiffs' land, which consists of 40,892 square feet is located on Shoddy Mill Road near its intersection with Route 6. The plaintiffs purchased the land on July 15, 1991, for $48,000. At that time, the land was unimproved, but was in a Business Zone. In that zone, automobile repair and sales facilities could not be conducted without a Special Permit. In March, 1992, the plaintiffs obtained from the Andover zoning authorities the Special Permit. The documents that were part of the application for the Special Permit designated a small portion of the premises CT Page 8501 as a "Display Area," to be used for the public display of five vehicles outside of a building. The Special Permit contains the following condition: "All vehicles not in the display area shall be stored in the fenced area." About a third of the Display Area lies within the area where the defendant acquired interests in the plaintiffs' land by condemnation.
In 1993, a one-story building with a loft was erected on the plaintiffs' land. In the first story, the building contains 1, 176 square feet, divided into an office, lavatory, and two bays. The building is used as an auto repair garage, which, combined with automobile sales, is the highest and best use of the land. In his report, the appraiser for the plaintiffs valued the building at $34,000, both before-and-after the condemnation. In her report, the appraiser for the defendant notes, "The easement area will not affect the building, therefore, only the land is valued." In accordance with the reports of the appraisers, neither party introduced any evidence that the land-interests condemnation caused any change in the value of the building, and this memorandum of decision will consider only changes in the value of the land.
 II
The interests that, by the condemnation, the defendant took in a portion of the plaintiffs' land may be summarized as follows: (1) a full and perpetual easement (hereinafter designated Easement P) to slope within an area of 6323 square feet along the frontage on Shoddy Mill Road, (2) an easement for a temporary work area for the construction of a septic system during the construction of Shoddy Mill Road (if not sooner released by the defendant, this easement terminates automatically upon completion of the septic system); (3) a right to relocate a farm stone fence; (4) a right to construct a driveway (the preceding two rights will terminate automatically upon completion of the work described therein).
 III
"`The owner of land taken by condemnation is entitled to be paid just compensation. Conn. Const. art. I § 11. If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained of it thereafter.' Lynch v. West Hartford, 167 Conn. 67, 73, 355 A.2d 42
CT Page 8502 (1974)." Minicucci v. Commissioner of Transportation, 211 Conn. 382,384, 559 A.2d 216 (1989). The same before-and-after rule applies whether the "partial taking" is the taking of a fee-simple interest or an easement-interest. "It is one of the general rules governing the right of eminent domain, that just compensation for taking a part of a parcel of land, or an easement in such a part, is to be ascertained by comparing the value of the entire parcel before the taking with the value of what remains after the taking, and in view of the new conditions created by the taking. If the latter of these two values be less than the former, the amount of the difference measures the damages to be paid." New York, N. H. and H.R. Co. v. New Haven,81 Conn. 581, 583, 71 A. 780 (1909).
In conformity with the foregoing holdings, both appraisers made before-and-after valuations of the plaintiffs' land. The appraiser for the plaintiffs estimated the "before" value to be $218,000 and the "after" value to be $173,000. The appraiser for the defendant estimated the "before" value to be $66,500 and the "after" value to be $56,475. The appraiser for the plaintiffs, confirming his report (Exhibit B, P. 6), during cross-examination said that" a special permit for use of the property for used cars or automobile repair adds about 40% in value to the property." Applied to the base of $48,000 that the plaintiffs paid for their land, this statement of the appraiser for the plaintiffs is concurred in by the court. The court finds that the value of the plaintiffs' land increased by 40% above the $48,000 purchase price when the plaintiffs obtained the Special Permit. The court further finds: that the value of the plaintiffs' land increased to $67,200 ($48,000 x 1.40) by the Special Permit; that that value was also the value at the time of the taking; that $67,200 is the "before" value of the plaintiffs' land; and that, therefore, the per square foot value of the plaintiffs' land at the time of taking is $1.643.
As noted previously, Easement P covers an area of 6323 square feet. Before the taking, that area had a value of $10,388, computed at $1.643 per square foot. The appraiser for the plaintiffs estimated (Exhibit B, P. 10) that the Easement P area declined 50% in value from its "before" value because of the restricted use resulting from the easement, and "the loss of the 10 large trees." The appraiser for the defendant also estimated (Exhibit 2, P. 2a) the decline in value for that area at 50% The court is of the opinion, and finds, that the decline in the value of the Easement P area is 50% of the "before" value, but that, in CT Page 8503 addition to the 50% decline ($5,194), the "after" value should be further reduced by: (a) $1,000 for the loss of trees, shrubs, and vegetation; and (b) as referred to in the report of the appraiser for the defendant (Exhibit 2, P. 2a), $975 for the loss of use of the temporary work area.
The foregoing computation yields a decline of $7,169 in the value of the Easement P area as a result of the defendant's taking that easement and the other rights. The $7,169, however, does not include any severance damages. Consequently, the reduction in value of the plaintiffs' land resulting from the taking of the interests in the plaintiffs' land, $7,169, is independent of and in addition to any severance damages the plaintiffs may have sustained as a result of the taking.
 IV
"When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of a portion of the property causes." Alemany
v. Commissioner of Transportation, 215 Conn. 437, 444, 576 A.2d 503
(1990). The reports of both appraisers contain statements that are relevant to the issue of severance damages. In his report (Exhibit B, P. 10), the appraiser for the plaintiffs says, "(I)t is my opinion the unencumbered area will be adversely affected by 20% from the before land value because of the higher elevation of the improved land from the new street grade and the loss of the display area for 5 cars." In her report (Exhibit 2, P. 2), the appraiser for the defendant says, "According to DOT engineers, the slope easement will have some impact on the display area, in the respect that it will be difficult to maneuver cars down to the display area without some type of regrading. A cost to cure the steep slope area was obtained from Department of Transportation engineers." Her report (Exhibit 2, P. 2a) shows the estimated cost for the "cure" regrading to be $3,000.
As noted earlier, about a third of the Display Area lies within the Easement P area. The remainder of the Display Area lies in the plaintiffs' remaining land. The testimony at the hearing establishes that, because of zoning regulations, the plaintiffs may no longer use even the pre-condemnation Display Area that lies outside Easement P. The evidence also establishes that the zoning authorities, on a proper application, are likely, CT Page 8504 but not certain, to approve for the remaining land a differently-located Display Area.
The court finds that, to obtain a Display Area comparable to the pre-condemnation Display Area, the plaintiffs will be required to: (a) make an expenditure for regrading estimated at $3,000: (b) apply for and obtain approval from the zoning authorities for a relocated Display Area;; (c) sustain a loss of sales-opportunities while the regrading and zoning procedures are ongoing. The court further finds that the foregoing requirements will decrease the value of the remaining land and are elements of severance damages to that land.
The plaintiffs' land remaining, after the 6323 square feet of Easement P are deducted, contains 34,569 square feet. The "before" value of that land, at $1.643 per square foot, is $56,796. The court is of the opinion, and finds, that the severance damages to the remaining land are 10% of the "before" value of the remaining land, or $5,679, plus $3,000, a total of $8,679. Easement P having caused an "after" reduction of the value of the Easement P area in the amount of $7,169, and severance damages having caused an "after" reduction of the value of of the remaining land in the amount of $8,679, a total of $15,848, the court finds that the "before" value of the plaintiffs' land is $67,200, and that the "after" value is $51,352.
 V
(A) The parties have stipulated that, if the plaintiffs are awarded damages in addition to the $10,000 already paid, interest on the additional award shall be at the rate of five percent (5%).
(B) It appearing in the file that there is a mortgagee, the court will enter an order that the sum due from the defendant be paid to the clerk of court, to be held subject to the further orders of the court.
(C) The plaintiffs having sustained damages in excess of the $10,000 already paid, by statute they are entitled to appraisal fees. The court awards the plaintiffs appraisal fees in the amount of $1,500.
VI CT Page 8505
In sum, the court finds that the plaintiffs have sustained damages of $15,848 as a result of the taking of Easement P and the rights. The court finds that the after-taking fair market value of the plaintiffs' land is $51,352 and that the before-taking fair market value of the plaintiffs' land is $67,200, and that, therefore, the after-taking fair market value of the plaintiffs' land is $15,848 less than the before-taking fair market value of the plaintiffs' land. Judgment may enter, therefore, for the plaintiffs to recover from the defendant damages in the amount of $15,848, less, however, the amount of $10,000 already paid, leaving an excess of $5,848 for which judgment may enter, plus interest at the rate of five percent (5%) per annum from the date of taking to the date of payment of the judgment debt, and plus reasonable appraisal fees of $1500, and costs, and judgment may further enter that the defendant pay the said sum of $5,848 and interest thereon to the Clerk of the Superior Court for the Judicial District of Tolland, the said sum of $5,848 and interest to be held by said Clerk of the Superior Court subject to the further orders of the court.
Rubinow State Trial Referee